ROBERT A. Ross et al., on Behalf of Themselves and All Other Persons Similarly Situated, Respondents, v AMREP CORPORATION et al., Appellants.

First Department, April 19, 1977

*I. Michael Bayda* of counsel *(Joseph N. Solomon* with him

on the brief; *Jacobs Persinger & Parker,* attorneys), for appellants.

*Samuel P. Sporn* of counsel *(Schoengold & Sporn,* attorneys), for respondents.

SILVERMAN, J. Defendants appeal from an order made pursuant to CPLR article 9 allowing the action to be maintained as a class action. In our view, the present complaint does not present a proper case for class action status, and therefore the order should be reversed.

Plaintiffs are purchasers of a lot in a real estate development known as Rio Rancho Estates outside Albuquerque, New Mexico. Some 14,000 lots have been sold. Some of these lots have been improved with houses and utilities and are occupied by the owners. Many are unimproved, undeveloped land. The sales have been made to residents of 22 States and 11 foreign countries. Certain of the developers, or persons connected with the developers, have recently been convicted on criminal fraud charges in the United States District Court of the Southern District of New York.

The order appealed from defines the class on whose behalf the action has been brought and the common issues as "all persons similarly situated as plaintiffs who bought land in Rio Rancho Estates, Albuquerque, New Mexico, from the defendants, from February 15, 1972 to October 9, 1975 on the issue of fraud and misrepresentations by the defendants to plaintiffs and members of the class in the sale of land at Rio Rancho, Albuquerque, New Mexico."

The statute states the following prerequisites to a class action (CPLR 901, subd a):

"§ 901. Prerequisites to a class action.

"a. One or more members of a class may sue or be sued as representative parties on behalf of all if:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

There is no dispute that the first requirement—numerousness—is met.

It will be convenient to consider next the third requirement: that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." (CPLR 901, subd a, par 3.) We do not think it can be said that plaintiffs' claims are typical of the claims and defenses of the class. Indeed, they are rather atypical.

In general, the most appropriate statute under which purchasers of land in an interstate program such as this would seek relief is the Federal Interstate Land Sales Full Disclosure Act (US Code, tit 15, § 1701 *et seq)* (hereinafter "the Federal Act"). Plaintiffs at first brought such a suit in the Federal court but discontinued it when it appeared their particular purchase had taken place so early as to be barred by the Statute of Limitations applicable to the Federal Act. (US Code, tit 15, § 1711.) Presumably that is the only reason that plaintiffs are now suing in the State court on common-law fraud and deceit. The claims of purchasers such as plaintiffs who are barred from relief under the Federal Act would not seem to be typical of the class. The class on whose behalf the suit purports to be brought is not limited to persons who are barred from relief under the Federal Act, but includes persons not so barred and who are presumably the largest portion of the class. But plaintiffs do not allege a claim under the Federal Act, although this court apparently has subject matter jurisdiction of such a claim. (US Code, tit 15, § 1719.) (Incidentally, there appears to be no logical reason for limiting the beginning date of the class to those who bought on or after February 15, 1972, which is simply the date plaintiffs bought. There is nothing to indicate that persons who bought on February 14, 1972 have any different rights. The fortuitous circumstance that plaintiffs happened to purchase their lot on February 15, 1972 should not define the class so as to exclude other persons with the same legal rights as plaintiffs.)

Again, plaintiffs inspected the land within six months after their purchase, at a time when they had a contractual right to cancel the purchase, and having so inspected the land, they expressed themselves as satisfied and chose not to cancel their purchase. It may well be that many purchasers included in the purported class did not make such an inspection.

Plaintiffs have continued to make payments on the purchase price of the land. Defendants argue that such payments made after knowledge of the alleged misrepresentations bar rescission. Whether or not defendants are correct, the legal situation as to persons who have continued to make payments is not necessarily the same as that of persons who have not continued to make payments.

Plaintiffs are purchasers of undeveloped land. There is a serious question whether their claims can be said to be typical of the members of the class who have built on the land and are living there.

Another of the statutory requirements for class action status is that "there are questions of law or fact common to the class which predominate over any questions affecting only individual members." (CPLR 901, subd a, par 2.)

In our view, the common questions in the present complaint do not predominate over any questions affecting only individual members. The complaint is apparently modeled on a related Federal Trade Commission complaint (even including allegations of a basis for Federal jurisdiction. See, e.g., par Sixth). Some 20 paragraphs of the complaint are devoted to allegations with respect to defendants' methods of selling lots and the alleged fraudulent misrepresentations. These misrepresentations are alleged to have been made through advertisements in various publications, promotional materials, booklets, pamphlets, letters, sales presentations by oral and written statements, movies and slides with false and misleading props. The alleged false representations relate to supply and demand for land, the liquidity or marketability of the land, land prices and values, land as an investment, personal and financial security, the stock market, banks and insurance, the direction and extent of population growth and movement in and about Albuquerque, the low-risk investment aspect, the ease of resale of lots, their market value and their comparability with other geographical areas, the future development and useability of the lots as home sites, the scarcity of lots and the risk of losing the deal, the likelihood of attracting industry and of buyers' obtaining employment, the right to exchange undeveloped land for parcels of comparable value in developed areas, etc. Although plaintiffs allege that they made their purchase in reliance on the false and misleading statements in these 20 paragraphs, it seems most unlikely that every one of these representations was made to and relied upon by any one

purchaser, including these plaintiffs who purchased a one-half acre lot for a price of $2,300, on which they have paid $1,600.

The complaint does not show any one misrepresentation, or group of misrepresentations, or common thread that may be applicable to substantially the entire group. Indeed, as stated above, plaintiffs have been unable to state a common issue more precisely than "the issue of fraud and misrepresentations by the defendants to plaintiffs and members of the class in the sale of land at Rio Rancho, Albuquerque, New Mexico." As to each member of the class, it would presumably be necessary to prove which misrepresentations were made to that member of the class. The problem is complicated by the fact that the sales were made through 50 independent brokers.

Of course, the falsity of each of these representations is a common question with respect to those purchasers to whom the particular misrepresentation was made. But we do not think that on this complaint those common questions can fairly be said to predominate. We note also that the laws of the home States of particular purchasers may be relevant to the claims of those particular purchasers and not others.

Another statutory requirement for class action status is that "the representative parties will fairly and adequately protect the interests of the class." (CPLR 901, subd a, par 4.)

The differences we have referred to seem to raise questions as to whether plaintiffs can fairly and adequately protect the interests of members of the class whose factual or legal situation is different from that of plaintiffs. We have already referred, for example, to the failure to seek relief under the Federal Act because of plaintiffs' individual situation.

The complaint seeks rescission. There must be many members of the purported class who do not wish to rescind, particularly people who are living on the land they have purchased. In that connection, the Special Term exercised the court's power, granted to it under CPLR 903, to direct that members of the class who wish to be excluded must request exclusion within 40 days after receipt of the directed notice, and that the judgment would include and affect all members who do not request exclusion. We think that the likelihood of persons who have built homes and are living in the development wanting to rescind is sufficiently problematical so that it was an improvident exercise of discretion to include them in the class, even with the provision for opting out.

There is a question whether plaintiffs, the owners of undeveloped land, can fairly and adequately protect or represent the interests of owners of developed land who are living on the land.

Another statutory requirement is that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (CPLR 901, subd a, par 5.)

We note that the United States District Court for the Southern District of New York has recently granted class action status in an action under the Federal Act brought by purchasers of land in Rio Rancho *(Bryan v Amrep Corp.,* 75 Civ 5911, LASKER, D. J.). In that case, the court pointed out that the complaint related to misrepresentations in a statement of record containing the common misrepresentations. In that case, further, the court also granted conditional class action status with respect to related claims essentially of fraud. In the latter aspect, the court relied on the fact that it had already approved the class action as to the statements of record and that the complaint contained an allegation of a common plan to defraud members of the class, and the court said that the existence of the common plan, pursuant to which a common course of conduct occurred, was a class issue. There is no such allegation in the present complaint though obviously it would not be much of an amendment to add such an allegation. But it seems unlikely that such an allegation would change the situation materially; it would presumably still be necessary to prove the particular representations made to individual members of the class on particular occasions. We note that in what appears to be a very similar case, the United States District Court for the Northern District of Ohio has refused class action status in an action brought by purchasers of land from Rio Rancho Estates. *(Andrews v Rio Rancho Estates,* USDC, No Dist of Ohio, Eastern Div, Civ Action, C73-58Y, CONTIE, J.)

While our own approach as to some aspects of the present situation is not always in accord with that of Judge LASKER in the *Bryan* case, it remains true that to the extent that a class action is necessary, the granting of class action status in the Federal action reduces the need for it in the present action. While Judge LASKER's order came after the order appealed from, this is outweighed by the fact that in the Federal court action, members of the class have the benefit of the Federal Act as well as essentially the benefits of a common-law fraud

action, while in the present action, the benefits of the Federal Act are not available. The class here involved, in the present suit, largely overlaps the class in the Federal suit. There is a serious question as to the desirability of two class actions covering essentially the same transactions and a large percentage of the same beneficiaries.

We note also that before either the Federal action or this action was instituted, the Federal Trade Commission brought a suit under section 57b of section 15 of the United States Code (Federal Trade Commission Act, § 19) on which both actions are based. While the Federal Trade Commision has not requested redress of injuries to the buyers, it has given notice that it may request such relief and such relief may be granted by the court. (US Code, tit 15, § 57b, subd [b].) While this is, of course, rather speculative, it increases the doubt as to whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

We note, as stated above, that a United States District Court in Ohio has refused class action status in a related action brought in that court. We have some question as to the appropriateness in those circumstances of a State court of New York determining that a class action is appropriate in the same situation, with a class so broad as to include residents of Ohio.

Perhaps no one of the considerations we have referred to, standing alone, would necessarily bar class action status. And we are certainly not passing on the availability of class action status on a more limited, nonduplicative complaint which might meet the requirements of the statute. But, on this complaint and the present definition of the class and statement of common issues, we do not think a proper case is presented for us to allow class action.

The order of the Supreme Court, New York County (RICCO-BONO, J. on opinion of TYLER, J.), entered December 14, 1976, granting plaintiffs' motion for class action status should be reversed, on the law and the facts and in the exercise of discretion, without costs, and plaintiffs' motion should be denied, and defendants' motion for an order determining that the action may not be maintained as a class action, and requiring that the complaint be amended to eliminate allegations as to representation of absent persons, should be granted.

KUPFERMAN, J. P., LUPIANO and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on December 14, 1976, unanimously reversed, on the law and the facts and in the exercise of discretion, plaintiffs' motion denied, and defendants' motion for an order determining that the action may not be maintained as a class action, and requiring that the complaint be amended to eliminate allegations as to representation of absent persons granted, without costs and without disbursements.