MICHAEL TANZER et al., as Trustees of TANZER ECONOMIC ASSOCIATES INC. PROFIT SHARING PLAN, Respondents, v TURBODYNE CORPORATION et al., Appellants. (Action No. 1.)

MICHAEL TANZER et al., as Trustees of TANZER ECONOMIC ASSOCIATES INC. PROFIT SHARING PLAN, Respondents, v MASONEILAN INTERNATIONAL, INC., et al., Appellants. (Action No. 2.)

First Department, June 26, 1979

### APPEARANCES OF COUNSEL

*John V. Thomas* of counsel *(Walter L. Stratton* with him on the briefs; *Donovan Leisure Newton & Irvine,* attorneys), for Studebaker-Worthington, Inc. and others, appellants. (Action No. 1.)

*Peter Dorsey* of counsel *(Richard L. Bond, Michael L. Hirschfeld* and *Terri E. Simon* with him on the briefs; *Dorsey, Windhorst, Hannaford, Whitney & Halladay* and *Marshall, Bratter, Greene, Allison & Tucker,* attorneys), for Turbodyne Corporation and others, appellants. (Action No. 1.)

*Lester L. Levy* of counsel *(Robert M. Kornreich* and *Evelyn F. Cohn* with him on the brief; *Wolf Popper Ross Wolf & Jones,* attorneys), for respondents. (Action No. 1.)

*John V. Thomas* of counsel *(Walter L. Stratton, Jeffrey Rudman* and *Benjamin Geizhals* with him on the briefs; *Donovan Leisure Newton & Irvine, Hale & Dorr,* and *Weiss Rosenthal Heller & Schwartzman,* attorneys), for appellants. (Action No. 2.)

*Lester L. Levy* of counsel *(Robert M. Kornreich* and *Evelyn*

*F. Cohn* with him on the brief; *Wolf Popper Ross Wolf & Jones,* attorneys), for respondents. (Action No. 2.)

## OPINION OF THE COURT

SILVERMAN, J.

These are appeals by defendants from orders of the Supreme Court, at Special Term, granting leave to maintain the actions as class actions pursuant to CPLR 902.

The two cases raise substantially identical issues on substantially identical facts.

Both cases involve "going private", or as plaintiffs put it "freeze-outs", whereby two subsidiary corporations with a minority of stock publicly outstanding were merged into wholly owned subsidiaries of the parent corporations presumably created for that purpose. In both cases, the parent corporations are Studebaker-Worthington, Inc. (SWI) and its wholly owned subsidiary Worthington Corporation (hereinafter together referred to as the "parent corporations"). The merged subsidiary corporations were Turbodyne Corporation in the one case and Masoneilan International, Inc., in the other. The parent corporations owned approximately 82% of the stock of Turbodyne and 78% of the stock of Masoneilan. The parent corporations announced that the controlling stock held by the parent corporations would be voted on the merger whichever way the public stock was voted. The merger was approved by the public stockholders by a margin of approximately 12 to 1 in the case of Turbodyne and approximately 5 to 1 in the case of Masoneilan, and the parent corporations voted their controlling stock accordingly, and the mergers were consummated.

The same plaintiffs by the same attorneys bring both lawsuits. The plaintiffs are Michael D. Tanzer and Deborah Tanzer, as trustees of Tanzer Economic Associates, Inc., Profit Sharing Plan. The Tanzers are husband and wife; the sole beneficiary of the profit-sharing plan is Michael D. Tanzer. Mrs. Tanzer is the daughter of Benedict Wolf, a partner in the firm of Wolf, Popper, Ross, Wolf & Jones, the attorneys for the plaintiffs (although we are informed that Mr. Benedict Wolf has not personally participated in the lawsuit). About two or three years before the mergers plaintiffs bought 25 shares each of Turbodyne and Masoneilan at prices of $7.125 for Turbodyne and $5.75 for Masoneilan for a total investment of under $200 in each case. Under the merger, they received

$19.50 cash per share in the case of Turbodyne and .8461 shares of SWI common stock with a market value of approximately $40 for each share of Masoneilan stock.

The total number of publicly held shares of stock in Turbodyne was 730,295 held by approximately 1,200 stockholders. The total number of publicly held shares of stock in Masoneilan was 405,840 held by approximately 375 stockholders.

Plaintiffs allege fraud and inadequacy of price in connection with the mergers. They primarily seek damages.

Defendants allege that class certification was improper because (a) plaintiffs will not fairly and adequately protect the interests of the class; (b) in any event, plaintiffs having held their stock until the actual merger are not representative of those who sold their stock on the public market before the merger and after the issuance of the proxy statement with respect to the merger; and (c) the class cannot include nonresidents of New York.

I am skeptical of the protestation of the defendants that they merely want to make sure that the judgment that is ultimately rendered will bind all members of the class. It is apparent that defendants' real hope must be that if class certification is denied, the action will die.

I am equally skeptical of plaintiffs' protestations that they merely bought the stock as an investment and that their interest is solely to protect their investment. Plaintiffs invested less than $200 in each of the corporations; they have already received several hundred percent profit on each investment. If successful, they may realize another few hundred dollars in each corporation. They can hardly be expected, just to protect this claim, to spend the many thousands of dollars that this lawsuit will cost, or to risk the imposition of costs and disbursements which might easily run to thousands of dollars.

These same plaintiffs have brought at least 13 class action lawsuits: in virtually all of them they have been represented by the same attorneys. There is no indication that their interest as stockholders in any of those cases was any greater than it is in the present case. Plaintiff Michael Tanzer has testified that after study of the situation he decided that these companies might be candidates for a possible merger, with a possibility of profit to the stockholders and that was why they bought the stock. But all they bought was 25 shares in each

company, thus acquiring a possibility of only a few hundred dollars profit in each company if they were fortunate.

I am led to conclude that plaintiffs have made a regular practice of seeking out companies where there is a likelihood of merger and then making a very small investment in the company precisely to position themselves to bring a class action lawsuit if there were a merger in circumstances where it appeared auspicious to bring such a lawsuit.

I note that plaintiff Michael Tanzer has a Ph.D. in economics and that among his activities is acting as consultant to lawyers with respect to lawsuits.

I recognize that on the one hand if we deny class action maintenance, litigation by these plaintiffs may well cease; and that on the other hand, the real interest of these plaintiffs is that of their lawyers who will advance disbursements and who, if successful, will presumably receive substantial fees. Thus we are presented again with the conflicting considerations of the usefulness of minority stockholders' suits in protecting the interests of the minority stockholders and the risk of abuse of this procedure by suits by plaintiffs who have only a nominal interest in the lawsuits with the possibility of settlements or other dispositions that pay more attention to the interests of the lawyers than to those of the nominal beneficiaries.

CPLR 901 sets forth a number of prerequisites to class action. One of them is that "the representative parties will fairly and adequately protect the interests of the class" (CPLR 901, subd a, par 4).

It is obvious that in many class action suits it is the lawyer who really protects the interests of the class and that the protection that the representative parties, the plaintiffs, can give is rather limited.

It may well be that in derivative suits the plaintiff need not know anything about or contribute anything to the action. (Cf. *Surowitz v Hilton Hotels Corp.,* 383 US 363.)

But the class action statute differs in two important respects from derivative suits. (a) To begin with derivative actions require no court authorization to be brought as such. Class actions on the other hand affirmatively require a discretionary determination by the court as to whether the action may be maintained as a class action (CPLR 902). (b) The class

action statute expressly contemplates that the plaintiff shall play some independent role, however small.

Class actions are to result in judgments which will bind or inure to the benefit of many persons who have not expressly authorized suit on their behalf. Therefore "[t]he entire process of adjudication which is comprised of the class representative, class counsel, and the trial judge must ensure adequacy of representation. *National Ass'n of Regional Medical Programs,* 551 F.2d at 346; Developments in the Law-Class Actions, 89 Harv.L.Rev. 1321, 1410-11 (1976)." *(Susman v Lincoln Amer. Corp.,* 561 F2d 86, 96.)

An obvious function of the class action representative is to act as a check on the attorneys, as an additional assurance that in any settlement or other disposition the interests of the members of the class will take precedence over those of the attorneys. This would seem to require that the class representative shall have some measure of independence from the attorneys, or at least not be the alter ego of the attorneys.

There has been considerable litigation involving the question of whether or not a class representative is so closely related to the attorneys as to not satisfy the court that the class representative will fairly and adequately protect the interests of the class or add anything to what the attorneys would do. Although there are decisions both ways, it has generally been held that partners or associates of the firm of attorneys who represent the plaintiffs may not be the class representatives. *(Kramer v Scientific Control Corp.,* 534 F2d 1085, cert den 429 US 830; *Turoff v May Co.,* 531 F2d 1357; *Brick v CPC Int.,* 547 F2d 185; *Graybeal v American Sav. & Loan Assn.,* 59 FRD 7; *Kriger v European Health Spa,* 56 FRD 104; *Cotchett v Avis Rent A Car System,* 56 FRD 549.)

With respect to close relatives of the attorneys acting as class representatives, the cases have been more divided, with most of them holding such close relatives to be improper representatives. (Developments in the Law-Class Actions, 89 Harv L Rev 1318, 1585, n 29.) Among cases rejecting such close relatives as class representatives are *Susman v Lincoln Amer. Corp.,* (561 F2d 86, *supra)* and cases cited therein *(supra,* p 90, n 6); *Turoff v May Co.* (531 F2d 1357, *supra); Stull v Pool* (63 FRD 702); *Viders v Pennsylvania Handicapped Workers* (90 Misc 2d 579). On the other hand, such close relationship was held not to bar class action status in *Fischer*

*v International Tel. & Tel. Corp.* (72 FRD 170) and *Labaton v Universal Leaf Tobacco Co.* (77 Civ 119 [SDNY]).

In the present case we have class representatives who are closely related to the lawyers for the class; who as a regular practice make numerous small investments for the purpose of positioning themselves to be able to bring lawsuits through that law firm; whose investments and interest in the lawsuit as stockholders are far smaller even than the average of the class they seek to represent and are substantially outweighed by the possibility of benefit to the law firm to which they are so closely related. Granted that the law firm is well known for its abilities and energy in stockholders' litigation, I think the totality of the circumstances raises so severe a cloud, on at least the appearance of these class representatives being able to protect the interests of the class through these attorneys, that the class should not be certified. If persons who have not affirmatively consented to the lawsuit are to be affected by the lawsuit, the proceedings should be "without cloud." *(Turoff v May Co., supra,* p 1360.)

For much the same reasons I have indicated, there may be doubt whether plaintiffs' claims satisfy the requirement of CPLR 901 (subd a, par 3) that "the claims or defenses of the representative parties are typical of the claims or defenses of the class".

I am not persuaded that as a general rule the provisions of the Employee Retirement Income Security Act of 1974 (US Code, tit 29, § 1104, subd [a], par [1]) would prohibit plaintiffs from bringing a class action in a proper case, or that defendants have standing to raise that point.

There is another factor which has not been adverted to by counsel but which we cannot ignore. CPLR 902 provides in part: "Among the matters which the court shall consider in determining whether the action may proceed as a class action are: * * * 4. the desirability or undesirability of concentrating the litigation of the claim in the particular forum". This action primarily involves an attack on the fairness of the price offered to minority stockholders in a merger among Delaware corporations governed by Delaware corporate law. We have recently held that such an action should properly be brought in the courts of Delaware and not New York.

"Complaints arising out of alleged unfair treatment of dissenting stockholders in a merger or consolidation of foreign corporations have traditionally been held to be matters that

should not be entertained in the courts of this State *(Langfelder v Universal Labs.,* 293 NY 200; *Koster v Shenandoah Corp.,* 258 App Div 1079), and such has been the holding even where money damages or an accounting from third parties were sought rather than a decree invalidating the merger *(id.),* and even in the face of allegations that undervaluations of the dissenters' stock resulted from fraud of the defendant officers and directors *(Koster v Shenandoah Corp., supra).* One reason for this rule is the desirability of equal treatment of all dissenting stockholders 'on the ground that unless such suits are confined to the state of incorporation there can be no uniformity in the recoveries and hence no equality of treatment among the dissenting shareholders.' (Restatement, Conflict of Laws 2d, § 313, Comment *c,* p 348.)" *(Mantei v Creole Petroleum Corp.,* 61 AD2d 910.)

In that connection, I note the unresolved problem of the extent of State court jurisdiction with respect to nonresident members of a class. (Cf. Uniform Class Actions Act, § 6.) We are told that of about 1,200 Turbodyne public stockholders about 169 are residents of New York; and of about 375 Masoneilan public stockholders about 65 are residents of New York.

Although the objection of improper forum would not perhaps be applicable to claims of persons who sold their stock before the merger, I do not think such claims are properly included in this class action. I think that the considerations applicable to the claims of such stockholders are so different from those like plaintiffs who held their stock on the date of merger that it cannot be said that: "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (CPLR 901, subd a, par 3). Plaintiffs' claim for damages assumes the effectiveness of the merger. The effectiveness of the merger is irrelevant to the claims of stockholders who sold before the merger date. Again, the effect, if any, of the proposed merger on the market price and the various considerations which may have led particular stockholders to sell their stock may be significant as to stockholders who sold at the market price. They are irrelevant to the claims of plaintiffs who did not sell. (Cf. *Basch v Talley Inds.,* 53 FRD 14, 19.)

In both cases, the orders permitting the actions to be maintained as class actions should be reversed and the motion for such relief be denied.

Action No. 1.

The order of the Supreme Court, New York County (KLEIN, J.), entered November 9, 1978, permitting this action to be maintained as a class action by the present plaintiffs and for incidental relief, should be reversed insofar as it granted class action status and relief incidental thereto, on the law and the facts, and in the exercise of discretion, with costs to appellants, and the motion to permit this action to be maintained as a class action should be denied.

Action No. 2.

The order of the Supreme Court, New York County (RICCO-BONO, J.), entered July 21, 1978, granting plaintiffs leave to maintain this action as a class action should be reversed on the law and the facts, and in the exercise of discretion, with costs to appellants, and the motion should be denied.

LANE, J. (concurring). This action was brought by Michael and Deborah Tanzer as trustees of Tanzer Economic Associates, Inc. Profit Sharing Plan (TEA), seeking damages based, *inter alia,* on breaches of fiduciary duties in connection with the merger of Turbodyne Corporation into Studebaker-Worthington, Inc. (SWI). Our review of this appeal is concerned with whether this action should be maintained as a class action.

TEA acquired 25 shares of Turbodyne class A common stock on May 3, 1973. On July 9, 1976, a statement was issued to Turbodyne shareholders proposing that the corporation merge with SWI and that the shareholders receive $19.50 per share for their stock. SWI was the 82% majority stockholder of Turbodyne, and acquiesced to the voting of its shares in accordance with the preference of the public shareholders. On August 4, 1976, at Turbodyne's annual meeting, the merger was approved. The merger took place on August 5, 1976.

The Tanzers contend that the true value of the shares was at least $27.40 rather than the $19.50 which was paid. The Tanzers brought this action in the name of all Turbodyne stockholders, including a separate cause of action for those who sold their shares between July 9, 1976 (the date of the proxy statement) and August 4, 1976 (the date of the merger vote). The basis of their claims is that they sold their shares in a market artificially depressed by the defendants' activities.

Special Term granted class action status. We would reverse, since at least three of the criteria for class action status as

outlined in CPLR 901 have not been met. CPLR 901 (subd a, pars 2, 3, 4) require that:

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class[.]"

We will review these criteria in their reverse order.

The Tanzers have sued through TEA, a profit-sharing plan subject to the provisions of the Employee Retirement Income Security Act of 1974, which requires the trustees of these plans to discharge their duties solely for the benefit of the participants and their beneficiaries (US Code, tit 29, § 1104, subd [a], par [1]). They cannot, therefore, maintain a class action which will benefit others outside the profit-sharing plan *(Norman v Arcs Equities Corp.,* 72 FRD 502, 504). We must conclude, therefore, that the Tanzers cannot adequately protect the interests of the class (CPLR 901, subd a, par 4).

In addition, the claims of the Tanzers are not typical of those they seek to represent (CPLR 901, subd a, par 3). They purport to bring the action on behalf of those who sold their shares between July 9 to August 4, 1976 in a market artificially depressed by the defendants. This claim is not the same as that pressed by the Tanzers for the group that received the $19.50 per share after merger on August 5, 1976.

In addition, the questions of fact, regarding the state of the market between between July 9 and August 4, would vary on each day, and the "artificial depression" would raise factual issues on an individual basis rather than be susceptible of resolution on behalf of the entire class (see CPLR 901, subd a, par 2; *Ross v Amrep Corp.,* 57 AD2d 99, 102).

Accordingly, the order of the Supreme Court, New York County (KLEIN, J.), entered November 9, 1978, authorizing maintenance of this action as a class action, should be reversed on the law, on the facts and in the exercise of discretion, and the motion denied, without costs or disbursements.

The Masoneilan action is substantially the same as that described in the companion appeal of *Tanzer v Turbodyne Corp.* (Action No. 1), except that the activity here involved the merger of the defendant Masoneilan International, Inc. with

Studebaker-Worthington, Inc., and the dates of the merger, as well as the sale of stock by some shareholders in an artifically depressed market, differ.

The order of Special Term should be reversed for the reasons stated in the companion appeal.

Accordingly, the order of the Supreme Court, New York County (RICCOBONO, J.), entered July 21, 1978, granting leave to maintain a class action, should be reversed on the law, on the facts and in the exercise of discretion, and the motion denied, without costs or disbursements.

KUPFERMAN, J. P., and BIRNS, J., concur with SILVERMAN, J.; LANE, J., concurs in a separate opinion.

Order, in Action No. 1, Supreme Court, New York County, entered on November 9, 1978, reversed, insofar as it granted class action status and relief incidental thereto, on the law and the facts and in the exercise of discretion, and the motion to permit this action to be maintained as a class action denied. Appellants shall recover of respondents $50 costs and disbursements of this appeal.

Order, in Action No. 2, Supreme Court, New York County, entered on July 21, 1978, reversed, on the law and the facts, and in the exercise of discretion, and the motion denied. Appellants shall recover of respondents $50 costs and disbursements of this appeal.