In re GULF OIL/CITIES SERVICE
TENDER OFFER LITIGATION.

Henry HERBST, et al., Plaintiffs,

v.

GULF OIL CORPORATION, et al.,
Defendants/Third-Party Plaintiffs,

v.

CITIES SERVICE COMPANY,
Third-Party Defendant.

No. 82 Civ. 5253 (SWK).

United States District Court,
S.D. New York.

Sept. 23, 1986.

**384**

Lord, Day & Lord, New York City, for defendants; John W. Castles, 3rd, Banks Brown, of counsel.

John E. Bailey, Kenneth C. Keener, Houston, Tex., of counsel, for Gulf Oil Corp.

Berger & Montague, P.C., Philadelphia, Pa., Kass, Goodkind, Wechsler & Labaton, Kaufman, Malchman & Kirby, P.C., Lowey, Dannenberg & Knapp, P.C., Pincus, Ohrenstein, Bizar, D'Allesandro & Solomon, Wolf Popper Ross Wolf & Jones, New York City, for plaintiffs.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

### I. INTRODUCTION

This litigation comprises twenty-two private actions arising out of an abortive 1982 tender offer by Gulf Oil Company ("Gulf") for the stock of Cities Service Company ("Cities Service").[1] The defendants are Gulf, a Pennsylvania corporation engaged in the exploration for, and production and marketing of, crude oil and natural gas, GOC Acquisition, a wholly-owned Delaware subsidiary of Gulf created for the purpose of implementing its tender offer for Cities Service, and various individuals, all directors and/or officers of Gulf at the time of the alleged wrongdoing (together, "the defendants"). Plaintiffs were all shareholders of Cities Service who either tendered their shares to Gulf pursuant to its tender offer or purchased Cities Service common stock or option calls on Cities Service stock between June 17, 1982 and August 7, 1982.

Now before this Court is plaintiffs' motion brought pursuant to Federal Rules of Civil Procedure Rule 23 to certify a class on behalf of all those who (1) tendered Cities Service stock to Gulf pursuant to its tender offer, or (2) purchased Cities Service stock or calls on Cities Service stock between June 17, 1982 and August 7, 1982.

The motion for class certification, contested vigorously by the defendants, has been extensively and ably briefed by the parties. In addition, the Court has considered the affidavits of the parties concerning the adequacy of the proposed class representatives and counsel.

### II. BACKGROUND

On June 17, 1982, Gulf and Cities Service jointly announced the signing of a merger agreement (the "Merger Agreement")

1. Besides this action, these cases are:

| | |
|---|---|
| 82 Civ. 5330 | Storch v. Gulf Oil |
| 82 Civ. 5492 | Slepoy v. Gulf Oil |
| 82 Civ. 5743 | Kelly v. Gulf Oil |
| 82 Civ. 5876 | Lederer v. Gulf Oil |
| 82 Civ. 5907 | Kilsheimer v. Gulf Oil |
| 82 Civ. 6094 | Keyser v. Gulf Oil |
| 82 Civ. 6343 | Goldfein v. Gulf Oil |
| 82 Civ. 6344 | Nemser v. Gulf Oil |
| 82 Civ. 6345 | Thompkins v. Gulf Oil |
| 82 Civ. 6381 | Fischer v. Gulf Oil |
| 82 Civ. 6407 | Gorsey v. Gulf Oil |
| 82 Civ. 6419 | Shapiro v. Gulf Oil |
| 82 Civ. 6693 | Zerillo v. Gulf Oil |
| 82 Civ. 6759 | Kenney v. Gulf Oil |
| 82 Civ. 6760 | Zerillo v. Gulf Oil |
| 82 Civ. 6761 | Kas v. Gulf Oil |
| 82 Civ. 6762 | Kenney v. Gulf Oil |
| 82 Civ. 6763 | Fischer v. Gulf Oil |
| 82 Civ. 6764 | Fischer v. Gulf Oil |
| 82 Civ. 6765 | Hartz v. Gulf Oil |
| 82 Civ. 5987 | Hyman v. Gulf Oil |

whereby Gulf would commence a tender offer for up to 41,500,000 shares (approximately 54.3 percent) of Cities Service common stock at a cash price of $63 per share and, after a successful completion of its tender offer, merge Cities Service into GOC Acquisition. Following the merger, the nontendering Cities Service shareholders would receive securities valued at $63 in exchange for each of their shares. Immediately prior to the announcement of the Merger Agreement, Cities Service stock sold at $37¾ per share. By the close of trading on June 18, 1982, the price per share had risen to approximately $53 per share.

The tender offer (the "Tender Offer") was commenced on June 22, 1982. In both the Merger Agreement and its offer to purchase (the "Offer to Purchase"), Gulf acknowledged that the proposed merger would be subject to scrutiny by the Federal Trade Commission ("FTC"), in particular, the antitrust implications of a merger between Gulf's and Cities Service's petroleum refining and marketing operations. However, Gulf represented that it would use its "best efforts" to assure that an antitrust challenge would not prevent the consummation of the merger, and, on June 25, 1982, Gulf issued a statement to its shareholders emphasizing its interest in Cities Service's domestic oil reserves.

On July 26, 1982, the FTC notified Gulf of a potential antitrust violation which Gulf could avoid by taking certain specified measures with respect to Cities Service's petroleum refining and marketing operations. The FTC stated it did not foresee any antitrust implications in Gulf's proposed acquisition of Cities Service's domestic oil reserves. Gulf refused to accept the FTC proposals and, on July 29, 1982, the FTC brought suit to enjoin the merger.

On July 30, 1982, Gulf issued a press release stating that it would both "vigorously" contest and seek to promptly settle the FTC action. Gulf did not negotiate with the FTC until August 3, 1982, at which point the FTC stated that it did not believe Gulf was acting in "good faith".

On August 4, 1982, Cities Service's management contacted Gulf and offered to reduce the acquisition price of $63 per share in order to offset any financial loss to Gulf caused by a settlement with the FTC. However, on August 6, 1982, Gulf publicly announced its decision to terminate the Tender Offer. Following Gulf's announcement, the price of Cities Service's stock fell to $30 per share.

Plaintiffs assert that the Merger Agreement and Offer to Purchase, together with certain representations made during the pendency of the Tender Offer (particularly Gulf's June 25, 1982 statement to its shareholders and its July 30, 1982 press announcement), contain misleading and materially untrue statements and constitute deceptive and manipulative practices in connection with a tender offer in violation of the Securities Exchange Act of 1934. Plaintiffs allege that defendants always intended—and failed to disclose their intention—to unilaterally terminate the Tender Offer if any of a number of contingencies occurred, such as passage by Congress of new tax legislation, depression of economic conditions in the petroleum industry, or adverse reaction by Gulf shareholders. When these events did in fact occur, plaintiffs allege that defendants used the FTC objections to the merger as an excuse to terminate the Tender Offer. Similarly, plaintiffs allege that Gulf did not abide by its stated intention to use its "best efforts" to settle its differences with the FTC and consummate the Tender Offer. The Complaint asserts that plaintiffs, and the members of the class they seek to represent, relied on defendants' misleading public statements to their detriment and that the price of Cities Service stock was artificially inflated by the misleading information.

Counts II and III of the Complaint are alleged against Gulf and GOC Acquisition only on behalf of those Cities Service shareholders who tendered their stock to Gulf pursuant to the Tender Offer. Plaintiffs allege that Gulf breached its contract with the putative class members—which contract was formed when the class mem-

bers tendered their shares—by refusing to pay the class members $63 per share of Cities Service stock (Count II). Plaintiffs also assert that the class members were third-party beneficiaries of the Merger Agreement and Gulf's repudiation of the Agreement denied the class members their right to receive $63 per share (Count III).

## III. CLASS ACTION

In order to proceed as a class, plaintiffs must first satisfy all the prerequisites of Rule 23(a) and must also demonstrate that this class action is appropriate under one of the three subdivisions of Rule 23(b). Here, plaintiffs rely on Rule 23(b)(3), which requires the Court to find that questions of law or fact common to the members of the class predominate over individualized questions, and that a class action is superior to other available methods of adjudicating this controversy. Plaintiffs have the burden of showing that each requirement of Rule 23(a) and (b)(3) is satisfied.

Rule 23(a) requires that four conditions of class certification be satisfied: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

### A. *Numerosity*

Defendants do not contest plaintiffs' claim that they have met the numerosity requirement. Plaintiffs estimate that as of the commencement of the Tender Offer on June 18, 1982, 76,482,806 shares of Cities Service common stock were outstanding, their ownership distributed among approximately 100,000 individuals. Moreover, shares and options were heavily traded on both the New York and Philadelphia Stock Exchanges during the pendency of the Tender Offer. It is clear that the class is so numerous that joinder of all members would be impracticable. The Court also notes that the proposed class is not so large as to render class certification impracticable. *Cf. Eisen v. Carlisle and Jacquelin*, 391 F.2d 555 (2d Cir.1968) (purported class numbered 3,750,000). Nor is plaintiffs' present inability to specify more exactly the number and identities of potential class members a bar to class certification.

*Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500, 503 (S.D.N.Y.1984); *Abrams v. John-Manville Corp.*, [1981–82 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98, 348 at 92, 158 (S.D.N.Y.1981); *Fischer v. Kletz*, 41 F.R.D. 377, 384 (S.D.N.Y.1966).

### B. *Commonality*

The second prerequisite of Rule 23(a) is that there exist questions of law or fact common to the class. The commonality requirement is satisfied where the questions of law or fact linking the class members are substantially related to the resolution of the litigation, even though the individuals are not identically situated. *Dura-Bilt v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981). Plaintiffs have demonstrated that numerous questions of law or fact exist common to the proposed class, such as, whether Gulf engaged in a course of conduct which artificially inflated the price of Cities Service securities and whether Gulf's public statements contained material misrepresentations, or omitted material facts. These questions are common to both tenderers of Cities Service shares and purchasers of calls during the tender period. While questions also exist which concern only those class members who owned shares at the time of the Merger Agreement and tendered their shares to Gulf, for example, whether Gulf owed or breached any contractual duty to the shareholders, a determination of those issues will not render class certification inappropriate. Subject to possible reconsideration at some later stage, plaintiffs have sufficiently demonstrated a commonality of issues to sustain their position that the purchasers of options and tenderers of shares should be embraced as one class. *See e.g., Stoller v. Baldwin-United Corp.*, 650 F.Supp. 341, [1985–86 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92, 298, at 92, 030 (S.D.Ohio 1986); *Handwerger v. Ginsberg*, [1974–76 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94, 934, at 97, 240 (S.D.N.Y.1975).

Defendants attempt to differentiate between those class members who tendered shares or purchased options before Gulf's "change of heart" in mid-July, 1982, and

those class members who tendered or purchased after that date. Defendants suggest that Gulf did not become disenamored with the merger until mid-July; thus, Gulf's pre-mid-July actions were performed with the intent to consummate the merger and its representations made in good faith. Defendants argue, therefore, that the class should be limited to those who tendered or purchased shares after Gulf's "change of heart", and further, that it would be inappropriate for those named plaintiffs who tendered or purchased shares before mid-July, 1982, to serve as class representatives.

Defendants ignore the real issue in this litigation. Plaintiffs allege that Gulf fraudulently portrayed its intentions from the outset of the Tender Offer. While plaintiffs do allege that fraudulent omissions and misstatements of fact were made during later July and early August, 1982, the crux of their allegations is that a manipulative scheme, common to all class members, existed from the outset. It may be true that different class members relied on different representations, and if necessary, this Court will utilize one of the various devices of Rule 23 to effectively administer the class when determining questions of reliance or damages. At this state of the litigation, however, the distinctions are too fine to support a denial of class certification. *See Korn v. Franchard Corp.*, 456 F.2d 1206, 1212 (2d Cir.1972); *Green v. Wolf Corporation*, 406 F.2d 291, 299–301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

### C. *Typicality and Adequacy*

■ The typicality and adequacy prerequisites are closely related. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). The interests of the class representatives should coincide with those of the class members they seek to represent, and the class representatives and their attorneys must vigorously and competently prosecute the action. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Mersay v. First Republic Corporation*, 43 F.R.D. 465, 469 (S.D.N. Y.1968).

Extensive discovery has been taken and the Court has been fully briefed by the parties concerning the suitability of each of the fifteen proposed class representatives.

Plaintiffs Fischer, Goldfein, Gorsey, Herbst, Hyman, Kas, Keyser, Storch and Thompkins clearly qualify as class representatives. Their affidavits, and the deposition transcripts of plaintiffs Goldfein, Herbst, Kas and Keyser, demonstrate that each is fully aware of the issues in this litigation, has been informed of the potential costs of the litigation, and is prepared and financially able to assume responsibility for those costs.

The claims of these nine plaintiffs are coextensive with the claims of the putative class members. Each plaintiff tendered his shares of Cities Service stock to Gulf pursuant to its Tender Offer or purchased Cities Service stock or option calls between June 16, 1982 and August 7, 1982.[2] Plaintiffs do not now have to show their individual reliance on a specific misrepresentation made by Gulf. To require proof of reliance at this stage of the proceedings would involve substantive determinations which should await trial. To do otherwise would burden the class certification proceedings in a way not envisioned by Rule 23. *Mersay, supra,* at 469. *See Korn v. Franchard, supra,* 456 F.2d at 1212; *Green v. Wolf, supra,* 406 F.2d at 301; *Barnes v. Osofsky* 373 F.2d 269, 272 (2d Cir.1967); *Feldman v. Lifton,* 64 F.R.D. 539, 548 (S.D.N.Y.1974); *Unicorn Field, Inc. v. Cannon Group,* 60 F.R.D. 217 (S.D.N.Y. 1973).

Defendants' argument that plaintiffs Goldfein and Herbst are "sophisticated" in-

---

**2.** Defendants argue that eleven of the fifteen named plaintiffs are not proper representatives since they did not produce their Letters of Transmittal as proof of their timely tender of their Cities Service stock. However, plaintiffs have demonstrated a sufficient factual basis of their ownership and tender of shares to allow these plaintiffs to proceed.

vestors and thus not competent class representatives is unavailing. The securities laws afford protection to all investors, both sophisticated and unsophisticated. *Securities and Exchange Commission v. Texas Gulf Sulpher Co.*, 401 F.2d 833, 849 (2d Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Nor does their sophistication render these plaintiffs' claims atypical. *Koenig v. Smith*, 88 F.R.D. 604, 607 (E.D.N.Y.1980); *Feder v. Harrington*, 52 F.R.D. 178, 184 (S.D.N.Y. 1970).

Defendants also contest the appropriateness of certifying plaintiffs Zerillo and Mr. and Mrs. Kenney as class representatives. They contend that Zerillo's and the Kenneys' interests are in conflict with the interests of other class members since Zerillo was formerly, and the Kenneys are presently, employed by Cities Service. Defendants foresee a conflict within the class because of the potential liability of Cities Service in a derivative action by its shareholders.

■ Zerillo's former employment by Cities Service does not present even the appearance of impropriety. Since he is familiar with the litigation and understands his responsibility to the class and to bear the costs of the litigation, the Court will allow him to proceed as a class representative. The Kenneys, however, by reason of their current employment by Cities Service, are not qualified to serve as class representatives since their interests are potentially adverse to those of the other class members. *Maynard, Merel & Co. v. Carcioppolo*, 51 F.R.D. 273, 277 (S.D.N.Y. 1970).

■ Plaintiff Kilsheimer is a member of a law firm representing another class member. Because there are a sufficient number of adequate class representatives, and to avoid even the slightest appearance of impropriety, plaintiff Kilsheimer's membership in the law firm representing another class member precludes his qualifying as class representative. *Lowenschuss v. Bluhdorn*, 613 F.2d 18, 20 (2d Cir.1980), *cert. denied*, 449 U.S. 840, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980); *Tanzer v. Turbodyne Corp.*, 68 A.D.2d 614, 417 N.Y.S.2d 706, 709–10 (1st Dept.1979). *See e.g., Seiden v. Nicholson*, 69 F.R.D. 681, 687 (N.D.Ill. 1976); *Kriger v. European Health Spa, Inc.*, 56 F.R.D. 104, 105 (E.D.Wis.1972).

The Court has reviewed the affidavits submitted by attorneys for plaintiffs and examined their conduct throughout the length of this action. The Court finds all counsel qualified and is assured they will vigorously prosecute this action.

For the reasons stated above, plaintiffs Fischer, Goldfein, Gorsey, Herbst, Hyman, Kas, Keyser, Storch, Thompkins and Zerillo have satisfied the requirements of Rule 23(a)(3) and (4). The interests of the plaintiffs appear co-extensive with those of the class, and the parties will ably and vigorously prosecute this action.[3]

### D. *Rule 23(b)(3)*

■ Defendants cannot contest that there exist some common questions of law or fact. The Court further finds that such questions predominate over questions affecting only some members of the class. The primary questions in this action relate to the issue of Gulf's liability: whether defendants made false or misleading representations, the materiality of such representations, and the effect on market price. Questions concerning reliance and damages are more individual in nature. The utility of the class action device in suits by small stockholders is geared to the type of

---

**3.** Plaintiff Estate of Kelly has not submitted an affidavit to the Court, and the affidavits submitted by the executrices for plaintiffs Shapiro and the Estate of Nemser have not satisfied the Court that the executrices' fiduciary duties to their respective estates and their responsibility to the class will not conflict. If these plaintiffs choose to submit additional papers detailing the estates' worth, the beneficiaries, the beneficiaries' continued interests in the assets of the estate, and their consent to participation in the class action, the Court will reconsider its determination. *See e.g., Markewhich v. Adikes*, 76 F.R.D. 68 (E.D.N.Y.1977); *State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. 569 (S.D.N.Y.1976); *In re Independent Gasoline Antitrust Litigation*, 79 F.R.D. 552 (D.Md.1978).

wrongdoing alleged in the Complaint. Thus, the variations in types of reliance and damages will not defeat the class action. *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Escott v. Barchris Corp.*, 340 F.2d 731, 733 (2d Cir.), *cert. denied*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); *Dura-Bilt Corp. v. Chase Manhattan, supra*, 82 F.R.D. at 178.

The Court also finds that, based on the number of potential plaintiffs, the relatively small amount of an individual shareholder's damage and the potentially large liability of defendants, allowing this litigation to proceed as a class action is superior to alternative methods of adjudicating this dispute. *See Green v. Wolf, supra*, 406 F.2d at 301; *Werfel v. Kramarsky*, 61 F.R.D. 674 (S.D.N.Y.1974); *In re Antibiotic Antitrust Actions*, 333 F.Supp. 278, 282 (S.D.N.Y.1971).

## IV. *CONCLUSION*

Therefore, the class is certified under Rule 23(b)(3).[4] The class certified consists of all shareholders of Cities Service who tendered stock to Gulf pursuant to the Tender Offer, and all purchasers of Cities Service call options on the open market from June 17, 1982 to and including August 7, 1982. Excluded from the class are Gulf, its affiliates and subsidiaries, the named defendants, members of their immediate families, entities in which they have a controlling interest and legal heirs, successors and assigns of any defendant.[5]

SO ORDERED.

---

4. The parties shall submit within thirty days of this order proposals regarding the manner and form of notice to class members.

5. All the cases listed in footnote 1 of this opinion are thus closed and consolidated with this case. This case shall proceed as *Herbst, Fischer, Goldfein, Gorsey, Hyman, Kas, Keyser, Storch, Thompkins, Zerillo, and all others similarly situated, v. Gulf Oil Corporation, et. al.*, 82 Civ. 5253.