OPINION OF THE COURT
Bernard J. Fried, J.
Plaintiffs John Samuel and Kimberly Brissenden bring these proposed class action lawsuits on behalf of themselves and other subscribers to basic cable television services offered by Time Warner Cable of New York City (TWCNYC), alleging that defendants are engaged in unfair and deceptive business practices in violation of section 349 of New York’s General Business Law. Plaintiffs claim that TWCNYC is charging its basic customers for converter boxes which they do not need because the customers subscribe only to channels that are not being converted. In addition, plaintiff Brissenden alleges that TWC-NYC charges customers for unnecessary remote controls regardless of their level of service.
In each action, defendants move, pursuant to CPLR 3211 (a) (1), (2) and (7), to dismiss the complaint based on documentary evidence, lack of subject matter jurisdiction, and failure to state a cause of action. Time Warner, Inc. also moves to dismiss the Samuel action pursuant to CPLR 3211 (a) (3) on the ground that this plaintiff lacks capacity to sue.
The Samuel complaint alleges that the vast majority of television sets in use today in the United States are “cable ready,” that is, they have an “RF” connection or are able to receive more than 64 channels. The Federal Communications Commission (FCC) prohibits cable television providers from scrambling television systems on the basic tier of service,(basic cable), and this is designed to allow cable subscribers to receive basic cable without a converter box. The complaint further alleges that the FCC requires cable operators to offer basic cable subscribers the option of having the signal pass directly to the subscriber’s TV without passing through a converter box.
Samuel alleges that, for basic cable, such as the service he subscribed to, a converter box
“provides no benefit whatsoever to the customer. On the contrary, a cable box allows for signal degra *539 dation because it constitutes an additional component with additional connections that needs to be hooked into the line between the source programming (coming over the cable lines to the subscriber) and the subscriber’s television set” (Samuel complaint 1119).
Notwithstanding the fact that the FCC requires TWCNYC to provide unscrambled basic cable and that converter boxes are not necessary to receive basic cable, TWCNYC routinely and systemically provides converter boxes to basic cable subscribers, and these consumers are generally likely to be lower income or elderly people. This monthly fee of $5.75 amounts to $69 a year for each customer for converter boxes which are “completely unnecessary” (id. ¶ 21).
The Samuel complaint asserts three causes of action: (1) violation of section 349 of the General Business Law; (2) breach of the implied duty of good faith and fair dealing in contractual relationships; and (3) unjust enrichment. Samuel purports to represent a class of all residents of New York who have a cable-ready television, who subscribe to TWCNYC’s basic cable service, and who TWCNYC provided with and charged for a converter box.
In support of its motion to dismiss the Samuel complaint, TWCNYC submits unrefuted documentary evidence showing that Samuel initiated his cable service on October 1, 1999. At that time, Samuel subscribed not only to basic cable, but also to the standard tier of cable service, which consists of scrambled channels such as CNN, TNT, The Discovery Channel, and several of TWCNYC’s premium channels, including Showtime, Starz and The Movie Channel. Samuel rented two converter boxes from TWCNYC. Over the years, Samuel ordered numerous pay-per-view selections, a service that requires rental of a converter box from TWCNYC. In November 2001, plaintiff downgraded his level of service and became a basic cable only subscriber. At that time, Samuel returned one of his converter boxes to TWCNYC, and from that point forward rented only one converter box.
The Samuel action was originally commenced in Queens County in or about January 2004, and transferred to this court by order of the Litigation Coordinating Panel dated November 17, 2004. At oral argument of these motions on May 25, 2005, counsel for plaintiff Samuel conceded that, in light of the recent decision by the Appellate Division, First Department, Saunders *540 v AOL Time Warner, Inc. (18 AD3d 216 [2005]), the third cause of action based on an unjust enrichment theory, would be withdrawn (transcript at 34).
Plaintiff Kimberly Brissenden commenced a prior lawsuit under her maiden name, Kimberly Saunders, together with another plaintiff in this court against AOL Time Warner, the above-referenced Saunders action. AOL Time Warner is the parent of defendant TWCNYC, itself a division of defendant Time Warner Cable, Inc. The complaint in the Saunders action alleged violations of General Business Law § 349, as well as common-law claims arising out of the defendant’s alleged failure to properly notify its subscribers that they did not have to rent cable box converters and remote controls to receive basic cable. AOL Time Warner moved to dismiss the complaint pursuant to CPLR 3211 (a) (1), (2), (3) and (7). By order dated February 9, 2004, Justice Helen Freedman granted the motion and dismissed the complaint in Saunders, but without prejudice to the filing of a new or amended complaint by Kimberly Saunders against the actual service provider, TWCNYC, based on violations of General Business Law § 349. With respect to the General Business Law claim, Justice Freedman ruled as follows:
“While defendant argues that full disclosure of rates mandate dismissal, Linsky v. NYNEX Corp., 1997 WL 1048597 (Sup. Ct. NY Co. 1997), the notice that cable ready TV[s] and VCR[s] can receive Basic Service by a direct hook-up may well be less than totally adequate because it implies that only some rather than most TVs are cable ready and that there are still some benefits to be obtained by renting a converter box. Whether the notice was adequate, may well be a question of fact. For that reason the General Business Law claims will not be dismissed with prejudice.”
The other plaintiff, Linda Saunders, was found not to be a proper plaintiff because she subscribed to the standard tier of service, not basic cable, and utilized the pay-per-view feature that is accessible with a converter box. Justice Freedman dismissed with prejudice the plaintiffs’ common-law claims, including breach of contract, fraud, negligent misrepresentation and unjust enrichment. The clerk was directed to dismiss the action, and it was marked disposed, preventing Kimberly Saunders from filing an amended complaint under that index number. By order dated June 15, 2004, Justice Freedman denied a motion to restore the case and directed the remaining plaintiff *541 to commence a new action to reassert her General Business Law § 349 claim. In fact, previously, on May 26, 2004, plaintiff Kimberly Brissenden filed her “First Amended Class Action Complaint” under her married name and under a new index number, index No. 601587/04, the action before me now.
The plaintiffs in Saunders appealed the dismissal of their common-law claims. By order dated May 3, 2005, the First Department unanimously affirmed the dismissal of those claims and all claims by Linda Saunders. In doing so, the First Department opined that:
“[W]ith the exception of plaintiffs’ General Business Law causes, which are not here at issue, plaintiffs have not alleged legally cognizable claims. TWCNYC’s notice to subscribers, advising that cable boxes are not required to view Basic cable service if the subscriber has a cable-ready television or videocassette recorder, but at the same time recommending rental of the cable boxes to ensure optimum service, was in compliance with the relevant Federal Communications Commission regulation (47 CFR 76.1622 [b] [1]). Assuming without deciding that the representations in the notice are somewhat exaggerated, they do not amount to a predicate for a claim of fraud or negligent misrepresentation (see Gaidon v Guardian Life Ins. Co. of Am,., 94 NY2d 330, 348 [1999]).” (Saunders v AOL Time Warner, Inc., 18 AD3d 216, 217 [1st Dept 2005].)
Plaintiff Kimberly Brissenden alleges that she was a basic cable customer of TWCNYC for approximately one year, renting two converter boxes and two remotes, even though she owned a cable-ready television set and a compatible remote. She was charged between $3.25 and $4.50 per month for each converter box and $.20 for each remote. When she commenced service on July 20, 2001, Brissenden signed a work order acknowledging that she ordered two converters and two remote controls and that she received TWCNYC’s customer handbook (see Curtis-Miller affidavit, exhibit D thereto). Sometime in May 2002, she unplugged the cable wire from the converter box and plugged it directly into her television. She claims she then received all of the basic channels along with some additional channels, including ESPN and CNN (Brissenden affidavit, Sept. 13, 2004, 1Í1I 3, 4).
The Brissenden complaint alleges that, because the FCC has required all TVs and VCRs manufactured and sold in the United *542 States since October 1994 to be cable-ready, the vast majority of consumers today do not need a converter box to view basic cable. Brissenden alleges that TWCNYC has failed to comply with specific FCC regulations requiring that cable operators adequately inform subscribers that they no longer need to rent converter box equipment or remote controls from defendants. The Brissenden complaint alleges that any notice TWCNYC sent to plaintiff was knowingly deceptive and false, and designed to confuse or mislead plaintiff. In addition, TWCNYC is allegedly guilty of “negative option billing” in violation of 47 USC § 543 (f), because it provided Brissenden with unnecessary converter boxes and remote controls that she had not affirmatively requested and/or upon which she did not have sufficient information at the time of installation of service.
Brissenden’s complaint purports to state a claim for violation of General Business Law § 349 and the consumer fraud and consumer protection statutes of the various states with respect to similarly-situated basic cable subscribers. Counts II and III seek an accounting and the imposition of a constructive trust over TWCNYC’s alleged “ill-gotten gains” based on allegations of fraud, misrepresentation and unjust enrichment.
TWCNYC alleges that it fully complied with FCC regulations requiring notice to subscribers that they can obtain basic cable by hooking the cable directly into their cable-ready TVs and VCRs, and that commercially-available remote controls are compatible with its cable boxes. This notice is contained in their customer handbook, in a section entitled “Equipment and Services” (notice), which is provided to all subscribers at the inception of service and once a year thereafter, in accordance with 47 CFR 76.1622 (a). The notice states in relevant part:
“[II 2[1]] Descrambling Cable Boxes: Since not all customers will subscribe to all programming services offered, we use scrambling technology to deliver a secure signal only to authorized homes. Scrambling is a method of changing the components of a signal at the cable television transmission center (head-end) to render it unviewable without an authorized descrambling cable box. We scramble all channels other than those on the Basic Service level. Whenever customers subscribe to service levels or chan *543 neis which are scrambled, they will need a descrambling cable box — even if their TV is cable-ready. A descrambling cable box is a descrambler and cable box contained in the same terminal and is connected to your entertainment system in the same way [as] a set-top cable box. With a descrambling cable box, customers may choose from several service options and order them without the need for home appointment. Descrambling cable boxes are available only from Time Warner Cable.
“[1i 3] Channel Mapping: We often ‘Channel Map’ many services. If you have a set-top cable box or direct hook-up, the channel number of many programming services may be different than if our descrambling cable box is used. For further information, please call us at 358-0900.
“[H 4] Cable-Ready/Cable-Compatible TV[S]: There are cable-ready TV[s] and VCR[s] that can receive our Basic Service by directly hooking the cable to the TV We do not recommend this type of connection due to the signal leakage and poor picture quality which may result from loose or improper connections. The capabilities of so-called ‘cable-ready’ or ‘cable-compatible’ sets vary greatly. They are not capable of descrambling cable TV signals. They can’t guarantee quality reception on all channels and may not have adequate channel capacity to receive our full lineup of programming or display it on the correct channels. Cable-ready TV sets are not equipped to receive any of our Premium channels, movies and events on pay-per-view or other scrambled cable signals. You can receive all of our programming on the accurate channel positions only with our cable box. To help eliminate confusion about whether a TV or VCR is really cable ready, the Federal Communications Commission will not allow TV[s] and VCR[s] manufactured or imported for sale in the United States after October 31, 1994 to be marketed as cable-ready or cable-compatible unless they meet certain [bandwidth] tuning and other performance standards . . .
“[1Í13] Compatible Remote Controls: There are several remote control models available from local retail stores that are compatible with your cable box. However, in most cases, the remote will not have *544 the complete pay-per-view, VCR Time Controlled Programming or other menu functions available with our remote. Should you have a question about the compatibility of a remote control, please call the number listed on your cable statement.” (Curtis-Miller affidavit, exhibit A thereto.)
Plaintiff Brissenden contends that TWCNYC’s motion to dismiss her complaint is barred by the “law of the case,” namely, the ruling by Justice Freedman granting AOL Time Warner’s motion to dismiss the complaint in Saunders, but without prejudice to a new or amended complaint against TWCNYC alleging misleading and deceptive acts in violation of General Business Law § 349.
The doctrine of law of the case provides that once an issue is judicially determined, it is not to be reconsidered by judges and courts of coordinate jurisdiction in the course of the same litigation (Martin v City of Cohoes, 37 NY2d 162, 165 [1975]; Holloway v Cha Cha Laundry, 97 AD2d 385, 386 [1st Dept 1983]). “The principle established in all jurisdictions is that so long as the facts remain the same, the rule of law once held by the court of last resort remains the rule throughout the subsequent history of the cause” (Matter of Laudy, 161 NY 429, 434-435 [1900]).
TWCNYC’s motion to dismiss the Brissenden complaint is not barred by law of the case. This is a different action, filed under a new index number, and naming a new defendant. Even if the Brissenden complaint were deemed to be merely an amendment of the Saunders’ complaint and TWCNYC had a full and fair opportunity to litigate the sufficiency of the General Business Law claim through its parent company, the Brissenden complaint does not merely replead count I of the Saunders’ complaint as against TWCNYC, but contains new and different factual allegations, such as the claim that TWCNYC’s notice to subscribers violates FCC Rules (47 CFR) § 76.630, and that TWCNYC’s billing practices constitute negative option billing in violation of 47 USC § 543 (f) (see Brissenden complaint 1HÍ 28, 41). Thus, the sufficiency of the General Business Law claims pleaded in the Brissenden complaint have not been judicially determined. Moreover, a dismissal without prejudice does not constitute upholding a claim. Indeed, Justice Freedman ruled only that the allegations of the Saunders’ complaint “may be sufficient” to state a General Business Law § 349 claim, not that they do state a claim.
*545 Turning to the merits, TWCNYC argues that dismissal of both complaints is warranted, since the notice is allegedly in compliance with FCC regulations, and thus constitutes a complete defense to the plaintiffs’ General Business Law § 349 claims pursuant to subdivision (d) of that statute.
“General Business Law § 349 is a consumer protection statute designed to protect against ‘[deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state’ ” (Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d 200, 205 [2004]). The statute seeks to secure an “honest market place where trust prevails between buyer and seller” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995], quoting Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472). In order to make out a valid section 349 claim, a plaintiff must allege both a deceptive act or practice directed toward consumers, and that such act or practice resulted in actual injury to her (Small v Lorillard Tobacco Co., 94 NY2d 43, 55-56 [1999]).
No violation of General Business Law § 349 occurs if the challenged conduct is in compliance with the rules and regulations of a federal commission (General Business Law § 349 [d]; Porr v NYNEX Corp., 230 AD2d 564, 576 [2d Dept 1997], lv denied 91 NY2d 807 [1998]). However, where only portions of a company’s food product packaging complied with federal regulations, General Business Law § 349 (d) did not conclusively establish a complete defense to an unfair trade practices claim (Sclafani v Barilla Am., Inc., 19 AD3d 577 [2d Dept 2005]).
In analyzing the sufficiency of the common-law claims of fraud and negligent misrepresentation pleaded in the Saunders’ complaint, the Appellate Division ruled that the notice to subscribers, advising that cable boxes are not required to view basic cable if the subscriber has a cable-ready TV or VCR, but at the same time recommending rental of the cable boxes to ensure optimum service, complied with the relevant FCC regulation, namely, 47 CFR 76.1622 (b) (1). Defendant contends that even though the ruling is dictum, since Justice Freedman’s refusal to dismiss the General Business Law claim with prejudice had not been appealed, it nevertheless is “of note” and should be followed (transcript at 17-18). Either the notice complies with this FCC regulation or it does not. Both Justice Freedman and the Appellate Division found compliance, and upon close examination of the cited regulation, I agree with these rulings regard *546 ing the substance of the disclosure as required by FCC regulations, but not with respect to its timing and delivery.
Subdivision (a) of 47 CFR 76.630 provides that “[c]able system operators shall not scramble or otherwise encrypt signals carried on the basic service tier.” Subdivision (b) requires that TWCNYC permit the remote operation of converter boxes with commercially-available remote control units. The notice clearly explains what scrambling is, why descrambling cable boxes are needed, that the company scrambles all channels other than those on basic cable, and that “[t]here are cable-ready TV[s] and VCR[s] that can receive our Basic Service by directly hooking the cable to the TV” (notice H 4). With respect to remote controls, the notice provides in a section entitled “Compatible Remote Controls” that there are commercially-available remote controls that are compatible with TWCNYC’s converter boxes (id. ¶13). While it is true that the notice does not “provide a representative list of the models of remote control units currently available from retailers that are compatible with the customer premises equipment they employ,” as required by 47 CFR 76.1622 (b) (3), this does not make the notice deceptive or misleading in a material way, particularly since the notice also advises subscribers who have a question about the compatibility of a remote control to call the number listed on their cable statement.
Section 76.1622 of title 47, entitled “Consumer education program on compatibility,” contains detailed notice requirements. Subdivision (a) requires that cable system operators provide a consumer education program on compatibility in writing, “at the time they first subscribe and at least once a year thereafter.” Subdivision (b) provides that this program shall include certain information, including the following:
“(1) Cable system operators shall inform their subscribers that some models of TV receivers and videocassette recorders may not be able to receive all of the channels offered by the cable system when connected directly to the cable system. In conjunction with this information, cable system operators shall briefly explain, the types of channel compatibility problems that could occur if subscribers connected their equipment directly to the cable system and offer suggestions for resolving those problems. Such suggestions could include, for example, the use of a cable system terminal device such as a set-top channel converter. Cable system operators shall also *547 indicate that channel compatibility problems associated with reception of programming that is not scrambled or encrypted could be resolved through the use of simple converter devices without descrambling or decryption capabilities that can be obtained from either the cable system or a third party vendor.”
Thus, while plaintiffs take issue with TWCNYC’s reasons for recommending rental of cable boxes in paragraph 4 of the notice, FCC regulations actually require TWCNYC to describe the limitations and disadvantages of direct hook-ups, including “channel compatibility problems.” As the FCC itself has recognized, “[c]able systems also use converter boxes to align channels, to cure direct pick-up interference problems from strong radio service signals and to control signal leakage” (Matter of Implementation of Section 17 of Cable Television Consumer Protection and Competition Act of 1992, Compatibility Between Cable Systems and Consumer Electronics Equipment, 1993 WL 756700, *3 n 13, 8 FCCR 725, 726 n 13 [Jan. 29, 1993]).
Plaintiffs also take issue with the statement in the notice that “[t]he capabilities of so-called ‘cable-ready’ or ‘cable-compatible’ sets vary greatly” (notice 1Í 4), because the FCC required all TVs and VCRs manufactured or imported for sale in the United States after October 31, 1994 to meet certain bandwidth tuning and other performance standards. However, TWCNYC cannot know which subscribers own TVs or VCRs manufactured after this date. The notice adequately alerts subscribers to the fact that equipment manufactured after October 31, 1994 is more likely to be “really cable ready” (see notice H 4). Nor can TWC-NYC know which of its subscribers might value the ability to order a pay-per-view movie or upgrade their service without a home appointment, options that are not available without renting TWCNYC’s converter box. While plaintiffs may have determined that the benefits of a converter box are outweighed by its cost, their subjective opinion is not relevant to the inquiry. Federal law simply requires disclosure of certain information about compatibility with subscribers’ own electronics equipment, so that they may make their own choices at the inception of service and thereafter.
However, to the extent that TWCNYC’s disclosures regarding the need for, and/or benefits of, converter boxes and TWCNYC remote controls are buried in the notice, the contents of which are not specifically brought to a new subscriber’s attention at the time they first subscribe to basic cable as required by 47 *548 CFR 76.1622 (a), a claim for violation of General Business Law § 349 is stated. In this regard, the Brissenden complaint alleges that TWCNYC is guilty of “negative option billing” in violation of 47 USC § 543 (f), which prohibits a cable company from charging a subscriber for any equipment that the subscriber has not affirmatively requested by name, and a subscriber’s failure to refuse a cable operator’s proposal to provide such equipment is not deemed to be such an affirmative request. TWCNYC relies on the “Work Order” that Kimberly Brissenden signed on July 20, 2001 as proof that she affirmatively requested the two converters and two remote controls before being billed for them and was given a copy of the customer handbook, which includes the notice. However, Brissenden claims that she “ordered” basic cable. TWCNYC then arrived at her home with its equipment, and proceeded to install all of the equipment listed on the preprinted work order, although one of the two converters was optional since Brissenden had a cable-ready television set, without specifically directing her to the contents of the notice.[2] The work order, printed the day before, does not separately list the converters and remote controls as optional equipment, or indicate in any way that a converter box will most likely be optional equipment if the subscriber has a TV or VCR manufactured after October 1994. A reasonable consumer who has not had a chance to read the notice prior to the completion of the installation process could well be misled into believing that this additional equipment was “required,” as opposed to “recommended,” for basic cable, despite their ownership of a cable-ready TV or VCR. Subscribers, like Kimberly Brissenden, who see no value to renting a converter box to receive basic cable are, therefore, injured by the payment of rental fees for equipment they deem completely unnecessary and would not have ordered if full and fair disclosure had been timely made (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000]).
On a motion to dismiss under CPLR 3211 (a) (7), the court must accept all of the plaintiffs factual allegations as true, afford the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within
*549 any cognizable theory (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Sims v First Consumers Natl. Bank, 303 AD2d 288, 289 [1st Dept 2003]). Accordingly, to the extent that Kimberly Brissenden alleges that she was misled into ordering an unnecessary converter box and remote by defendants’ installation practices, she has stated a claim for a violation of General Business Law § 349 that is not preempted by the federally-mandated disclosures in the notice. John Samuel, however, originally subscribed in October 1999 to a level of service that required a converter box. He would have received the notice at the time of installation, and for two years thereafter prior to his downgrade in November 2001 to basic cable. Thus, he has failed to allege that he was mislead by any unfair and deceptive installation practices by TWCNYC or that it breached any obligation of good faith and fair dealing arising out of their contractual relationship, and his counsel’s request, made during oral argument of the motions, for leave to serve an amended complaint is denied.
TWCNYC argues that the voluntary payment doctrine bars the plaintiffs’ claims, because they seek to recover as damages the sums they voluntarily paid to TWCNYC over the years for the rental of converter boxes and remote controls. However, that common-law doctrine only “bars [the] recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law” (Dillon v U-A Columbia Cablevision of Westchester, 100 NY2d 525, 526 [2003], citing Gimbel Bros, v Brook Shopping Ctrs., 118 AD2d 532, 535-536 [2d Dept 1986]). As discussed above, Brissenden’s installation claims are predicated on the absence of full disclosure at the time of installation, as required by 47 CFR 76.1622 (a). This is not a situation, as in Dillon, where payments were made as a matter of convenience with full disclosure.
Accordingly, TWCNYC has demonstrated its entitlement to dismissal of the Samuel complaint pursuant to CPLR 3211 (a) (1) and (7) based on the content of the notice, which is in compliance with FCC regulations. However, plaintiff Kimberly Brissenden has stated a claim for violation of General Business Law § 349 based on defendants’ installation practices, and the documentary evidence furnished by defendants does not “utterly refute” her allegations and conclusively establish a defense as a matter of law (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]).
Accordingly, for the foregoing reasons, it is hereby ordered that the motion to dismiss the complaint in Samuel v Time *550 Warner, Inc. (Index No. 404049/04) is granted, and the clerk is directed to enter judgment dismissing the complaint in that action, with costs and disbursements to defendants; and it is further ordered that the motion to dismiss the complaint, in Brissenden v Time Warner Cable of N.Y. City (Index No. 601587/04) is denied.

. Paragraph numbers do not appear in the notice, and have been added only for ease of reference.

. These factual allegations are not explicitly made in the complaint filed in this action. However, I find that they can be reasonably inferred from the allegations made in paragraphs 9, 18 and 41 of the complaint, paragraph 3 of Brissenden’s affidavit submitted in opposition to the motion to dismiss, and from the work order. In addition, this claim was articulated by counsel for Brissenden at oral argument of the motions (transcript at 38-39), and no objection was made that the claim was factually unsupported.