■ KALMAN YEGER et al., Respondents, v E*TRADE SECURITIES LLC, Appellant. [884 NYS2d 21]—

Order, Supreme Court, New York County (Herman Cahn, J.),

entered November 13, 2008, that, inter alia, granted plaintiffs' motion for class certification, unanimously reversed, on the law and the facts, without costs, the motion denied, and the class decertified.

Defendant E*Trade is a registered brokerage firm that offers on-line trading and various other services, such as research. It generates income from accounts primarily through commissions. In 2003, the period relevant to this action, it had approximately 3.5 million brokerage accounts.

The E*Trade customer agreement authorizes the automatic debiting of an account to assess an account maintenance fee (AMF) and refers to a schedule of fees on E*Trade's Web site. This assessment occurs if the account balance falls below $5,000 or if the customer has not executed at least two commissioned trades in the prior six months. Among exceptions to this rule is the situation where the customer has "linked" brokerage accounts with E*Trade with a total balance over $20,000.

Initially, E*Trade would assess a $15 AMF on the 27th of the last month of each quarter. However, this created practical problems because the 27th was not always a business day. E*Trade therefore changed its policy effective September 2003, raising the AMF to $25 and assessing it "during the last week of the quarter ending month." Accordingly, in September 2003, E*Trade assessed the AMF on September 24, seven days before the end of the quarter.

In December 2003, the seventh day before the end of the quarter (that technically was "during the last week") fell on Christmas. Consequently, E*Trade assessed the AMF on the *prior* business day, the 24th. However, it first sent a "Smart Alert" e-mail to customers it intended to assess and whose balances were below $25, because these accounts would be subject to closure as a result. The alert stated that the AMF assessment would occur on the 24th and encouraged these customers to avoid an AMF by depositing $5,000 or more into their accounts. The alert also provided an Internet link for transferring funds.

E*Trade again changed its policy beginning the first quarter of 2004, charging the AMF on Wednesday during the last full week of the last month of each quarter.

Plaintiffs Kalman Yeger and Cindy Yeger became E*Trade customers on January 26, 2000. In March, June and September 2001, E*Trade assessed their accounts in accordance with the customer agreement. However, when Mr. Yeger complained, E*Trade refunded the assessment as a courtesy.

In September 2003, E*Trade again assessed plaintiffs' ac-

count. Mr. Yeger again requested a refund, stating that he would deposit funds to bring the account balance above the minimum. When he deposited the funds, E*Trade again refunded the assessment as a courtesy.

In December 2003, E*Trade assessed the Yegers a $25 AMF for the fourth quarter of 2003. As noted, this was on December 24 (eight days before the end of the quarter) because, according to E*Trade, the "last week" of the month began on Christmas Day. Plaintiffs had not received the December 19 "Smart Alert" warning because their account contained more than $25.

When Mr. Yeger complained, E*Trade at first declined to offer a courtesy refund because plaintiffs had received four courtesy refunds previously and E*Trade had an internal policy of refunding a properly assessed AMF as a courtesy only on a one-time basis, but after Mr. Yeger continued to complain, E*Trade agreed to refund the AMF. Nevertheless, during the same conversation, Mr. Yeger changed his mind, declined the refund and threatened this lawsuit.

Plaintiffs filed this action on August 11, 2004. They framed the complaint as a class action and focused primarily on the AMFs that E*Trade collected in December 2003. The complaint originally stated claims for breach of contract, violation of General Business Law § 349 and unjust enrichment. However, on February 6, 2006, the motion court dismissed the claims under the General Business Law and for unjust enrichment, leaving only the breach of contract claim. Plaintiffs allege that E*Trade breached the customer agreement by assessing the December 2003 AMF a day early, on December 24, 2003, instead of during "the last seven days" or "the last week" of the quarter. Plaintiffs also contend that the provision in the customer agreement describing that the AMF would be charged "during the last week of the quarter ending month" is so vague that it constitutes a breach of contract for defendant to have assessed an AMF prior to the last day of the quarter.

In April 2006, the Yegers moved to certify the action as a class action and to certify them as class representatives. E*Trade opposed. While the motion for class certification was pending, plaintiffs moved to amend the complaint to add the allegation that E*Trade also improperly assessed their account several times in 2001 because the charge would not have been imposed if their "linked" accounts totaled more than $20,000. The motion court denied the motion to amend and this Court affirmed (52 AD3d 441 [2008]).

In April 2008, Justice Cahn granted class certification and found the Yegers to be proper class representatives. Noting that

the "minuscule" nature of the damages sought did not bar the claim, the court found the requisite class action element of commonality based on the allegations that "the same practices were done" to all members of the class. Aware that plaintiffs had accepted a refund, the court stated there were "other deductions from the account for [m]aintenance [f]ees which plaintiffs contend were deducted early and which were not returned or accepted." After motion practice about the proper term of the class period, the parties eventually stipulated, without prejudice to this appeal, to a class period "commencing with the third quarter of 2003 and ending with the fourth quarter of 2003" as to all customers charged an AMF "in violation of their customer agreement."

The Appellate Division may exercise de novo review of a class certification decision, "even when there has been no abuse of discretion as a matter of law by the nisi prius court" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 53 [1999]). To determine whether a lawsuit qualifies as a class action, a court applies the five criteria of CPLR 901 (a) (numerosity, commonality, typicality, adequacy of representation and superiority) to the facts (*see Hazelhurst v Brita Prods. Co.*, 295 AD2d 240, 242 [2002]).* "[T]hat wrongs were committed pursuant to a common plan or pattern does not permit invocation of the class action mechanism where the wrongs done were individual in nature or subject to individual defenses" (*Mitchell v Barrios-Paoli*, 253 AD2d 281, 291 [1999]).

Whether E*Trade's conduct in assessing AMFs a day early caused an individual class member to suffer actual damages depends upon facts so individualized that it is impossible to prove them on a class-wide basis. The motion court concluded that class certification was appropriate because there was a common question as to whether E*Trade collected the AMF too early, i.e., before the date permitted in E*Trade's contracts. However, this is only half the question. A breach of contract claim only exists if E*Trade's common conduct actually damaged a customer. Therefore, to recover, each class member would have to show that he or she would have avoided the fee had E*Trade collected it at the proper time. There were several actions that customers could have taken to avoid the assessment (such as depositing additional funds or executing additional se-

---

* In addition to determining whether a plaintiff has met the requirements of CPLR 901, the court must also consider the factors listed in CPLR 902 that concern the relative propriety of maintaining the action as a class action. However, as plaintiffs here do not satisfy the criteria under CPLR 901, we need not reach this analysis.

curities trades), as well as other conditions not under their control that could have prevented it, such as when E*Trade, as a courtesy, refunded those customers who paid the AMF. It is this aspect of proof that would be subject to a host of factors peculiar to the individual. This aspect of proof is critical. To allow the Yegers, or any class member, to recover the fee merely because E*Trade collected it early—without proof that each member of the class would have taken steps to avoid the fee had collection occurred at its proper time—would result in a windfall to those plaintiffs who would not have taken corrective action. In certain cases, it could also result in writing the AMF out of the agreement entirely, a fee the parties had agreed to freely. Accordingly, individualized issues, rather than common ones, predominate (CPLR 901 [a] [2]).

In addition, plaintiffs are not proper class representatives because their rejection of E*Trade's offer to refund the fee renders their claim atypical (CPLR 901 [a] [3]). We have considered the plaintiffs' remaining contentions and find them unavailing. Concur—Tom, J.P., Andrias, Saxe, Moskowitz and DeGrasse, JJ.