OPINION OF THE COURT
Bernard J. Fried, J.
Plaintiff Kimberly Brissenden brings this proposed class action lawsuit on behalf of herself and other subscribers to basic-only cable television offered by Time Warner Cable of New York City, a division of Time Warner Cable Inc. Plaintiff alleges that Time Warner is engaged in unfair and deceptive business practices in violation of section 349 of the General Business Law, because it is charging its basic cable customers for converter boxes, which they do not need, because the customers subscribe only to channels that are not being converted, and because Time Warner charges customers for unnecessary remote controls regardless of their level of service.
Plaintiff now moves, pursuant to CPLR 901 and 902, for an order: (1) certifying this action as a class action; (2) naming Kimberly Brissenden the class representative; (3) appointing the Law Offices of Stephen V Saia and Jacob B. Perkinson of the firm Johnson & Perkinson as lead counsel; and (4) pursuant to CPLR 904 (d), requiring Time Warner to bear the expense of notice to the proposed class. Plaintiff seeks to represent two classes, defined as follows:
“(1) all present and former residents of the State of New York and customers of Time Warner that have a cable-ready television set(s) or a VCR who subscribe to basic-only service provided by Time Warner and had a converter box(es) installed during the class period from April 1994 to the present (“Class Period”), and then paid Time Warner rental charges, deposits and/or installation charges for the converter box equipment; and
“(2) all present and former residents of the State of *1086 New York and customers of Time Warner who subscribe to any level of service provided by Time Warner and had installed a remote control during the Class Period, and then paid Time Warner rental charges for the remote controls.”
Time Warner opposes the motion, arguing that any injury stemming from the deception that Time Warner is allegedly engaged in varies from subscriber to subscriber, based on each customer’s particular situation and what each customer knew, or was told by Time Warner at the point of sale or installation, about the optional nature of the converter boxes and remote controls. Time Warner also claims that Kimberly Brissenden is not a typical or appropriate class representative, because she cannot be an effective check on her brother-in-law, Stephen V Saia, Esq., one of two proposed lead counsel for the class, and because circumstances strongly suggest that Mr. Saia, rather than the plaintiff, is the motivating force behind this litigation.
In 2003, a lawsuit was filed in this court against AOL Time Warner, Inc. by two plaintiffs, Kimberly Saunders and Linda Saunders, entitled Saunders v AOL Time Warner, Inc. (index No. 601544/03). The complaint in the Saunders action alleged violations of General Business Law § 349, as well as common-law claims arising out of the defendant’s alleged failure to properly notify its subscribers that they did not have to rent cable box converters and remote controls to receive basic cable. AOL Time Warner moved to dismiss the complaint. By order dated February 9, 2004 (Saunders v AOL Time Warner, 2004 WL 5284146 [2004]) Justice Helen Freedman granted the motion and dismissed the complaint, but without prejudice to the filing of a new or amended complaint by Kimberly Saunders against the actual service provider based on violations of General Business Law § 349. The other plaintiff, Linda Saunders, was found not to be a proper plaintiff, because she subscribed to the standard tier of service, not basic cable, and utilized a feature only accessible with a converter box. Justice Freedman dismissed with prejudice the plaintiffs’ common-law claims, including breach of contract, fraud, negligent misrepresentation and unjust enrichment. The Clerk was directed to dismiss the action, and it was marked disposed, preventing Kimberly Saunders from filing an amended complaint under that index number. On June 15, 2004, Justice Freedman denied a motion to restore the case and directed the remaining plaintiff to commence a new action to reassert her General Business Law § 349 claim.
*1087 The plaintiffs in Saunders appealed the dismissal of their common-law claims. By order dated May 3, 2005, the First Department unanimously affirmed the dismissal of those claims and all claims by Linda Saunders. (Saunders v AOL Time Warner, Inc., 18 AD3d 216 [1st Dept 2005].) While the appeal of Justice Freedman’s decision in the Saunders action was pending, in May 2004, plaintiff Kimberly Saunders filed her “First Amended Class Action Complaint” under her married name, Brissenden, and under a new index number (index No. 601587/ 04), the action before me now. Defendants moved to dismiss the amended complaint, and by order dated October 24, 2005, I denied that motion. (Samuel v Time Warner, Inc., 10 Misc 3d 537 [Sup Ct, NY County 2005].)[1] In doing so, I agreed with Justice Freedman, as affirmed by the Appellate Division, that the substance of Time Warner’s equipment and services notice complied with applicable FCC regulations as to content, but held that Kimberly Brissenden had stated a claim under General Business Law § 349, based on the timing and delivery of the notice. Specifically, I ruled that
“to the extent that TWCNYC’s disclosures regarding the need for, and/or benefits of, converter boxes and TWCNYC remote controls are buried in the notice, the contents of which are not specifically brought to a new subscriber’s attention at the time they first subscribe to basic cable as required by 47 CFR 76.1622 (a), a claim for violation of General Business Law § 349 is stated. In this regard, the Brissenden complaint alleges that TWCNYC is guilty of ‘negative option billing’ in violation of 47 USC § 543 (f), which prohibits a cable company from charging a subscriber for any equipment that the subscriber has not affirmatively requested by name, and a subscriber’s failure to refuse a cable operator’s proposal to provide such equipment is not deemed to be such an affirmative request. TWCNYC relies on the ‘Work Order’ that Kimberly Brissenden signed on July 20, 2001 as proof that she affirmatively requested the two converters and two remote controls before being billed for them and was given a copy of the customer handbook, which includes the notice. However, Brissenden claims that *1088 she ‘ordered’ basic cable. TWCNYC then arrived at her home with its equipment, and proceeded to install all of the equipment listed on the preprinted work order, although one of the two converters was optional since Brissenden had a cable-ready television set, without specifically directing her to the contents of the notice. The work order, printed the day before, does not separately list the converters and remote controls as optional equipment, or indicate in any way that a converter box will most likely be optional equipment if the subscriber has a TV or VCR manufactured after October 1994. A reasonable consumer who has not had a chance to read the notice prior to the completion of the installation process could well be misled into believing that this additional equipment was ‘required,’ as opposed to ‘recommended, ’ for basic cable, despite their ownership of a cable-ready TV or VCR. Subscribers, like Kimberly Brissenden, who see no value to renting a converter box to receive basic cable are, therefore, injured by the payment of rental fees for equipment they deem completely unnecessary and would not have ordered if full and fair disclosure had been timely made (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000]).” (Samuel v Time Warner, Inc., 10 Misc 3d at 547-548.)
CPLR 901 (a) sets forth the prerequisites for a class action. The criteria include numerosity, commonality, typicality, adequacy of representation and superiority. (CPLR 901 [a]; Yeger v E*Trade Sec. LLC, 65 AD3d 410, 413 [1st Dept 2009]; Weinberg v Hertz Carp., 116 AD2d 1, 4 [1st Dept 1986], affd 69 NY2d 979 [1987].) Plaintiff bears the burden of establishing the propriety of certifying a class, and that the factors set forth in CPLR 901 favor class-action certification. (CLC/CFI Liquidating Trust v Bloomingdale’s, Inc., 50 AD3d 446, 447 [1st Dept 2008]; Rabouin v Metropolitan Life Ins. Co., 25 AD3d 349, 350 [1st Dept 2006].) However, these criteria must be liberally construed in favor of allowing the class action. (City of New York v Maul, 59 AD3d 187, 189 [1st Dept 2009]; Pruitt v Rockefeller Ctr. Props., 167 AD2d 14, 20-21 [1st Dept 1991]; Friar v Vanguard Holding Corp., 78 AD2d 83, 91 [2d Dept 1980].)[2]
*1089 The class must be so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. (CPLR 901 [a] [1].) Plaintiff contends that the number of proposed class members, based on defendant’s supplemental responses to interrogatories, is in the tens of thousands, and Time Warner does not challenge the numerosity prerequisite.
CPLR 901 (a) (2) directs the court to determine whether “there are questions of law or fact common to the class which predominate over any questions affecting only individual members.”
“[T]he decision as to whether there are common predominating questions of fact or law so as to support a class action should not be determined by any mechanical test, but rather, ‘whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.’ ” (Friar, 78 AD2d at 97 [citations and internal quotation marks omitted].)
Despite the liberal construction the court must place on the commonality requirement, plaintiff has not demonstrated that common issues predominate over individual questions as to the elements of a General Business Law § 349 claim, which, by my October 24, 2005 order, is limited to a “timing and delivery” claim.
A General Business Law § 349 claim has three elements that must be proved: (1) that the challenged act or practice was consumer-oriented; (2) that it was misleading in a material way; and (3) that the plaintiff suffered an injury as a result of the deceptive act. (Stutman v Chemical Bank, 95 NY2d at 29; Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995].) Deceptive or misleading representations or omissions are defined objectively as those “likely to mislead a reasonable consumer acting reasonably under the circumstances,” i.e., the plaintiffs circumstances. (Oswego Laborers’ Local, 85 NY2d at 26, 27.) Although a plaintiff need not establish reliance on a defendant’s deceptive act to establish liability under General Business Law § 349, the plaintiff must still demonstrate that he or she suffered an “actual injury” as a result of the deceptive conduct. (Tepper v Cablevision Sys. Corp., 19 AD3d 585, 586 [2d Dept 2005]; Small v Lorillard Tobacco Co., 252 AD2d 1, 7 [1st Dept 1998], affd 94 NY2d 43 [1999].)
*1090 Even assuming that Time Warner’s notice was delivered to new subscribers of basic cable after installation of the converter box and remotes, a customer does not suffer any injury as a result of Time Warner’s failure to point out the optional nature of the converter boxes and remotes for cable-ready televisions if that customer wanted the equipment, the equipment actually improved reception or if that customer knew from other sources that this equipment was optional.
In a lawsuit brought by plaintiffs counsel against another cable company, Comcast Corp., on behalf of customers who subscribed to basic programming and who were provided, but did not affirmatively request, a converter box and remote control, class action certification was denied. (Deitz v Comcast Corp., No. C 06-06352, 2007 WL 2015440, 2007 US Dist LEXIS 53188 [ND Cal, July 11, 2007].) In ruling that individual issues will dominate the litigation on the claim that Com-cast had violated California’s deceptive trade practice and consumer protection laws, the District Court opined as follows:
“Here, it will be necessary to determine subscriber-by-subscriber whether even if Comcast revealed the fact that the equipment was not needed in a particular case, the subscriber would have rented the equipment anyway to improve the signal or to view all the channels that could not be viewed through a cable-ready but limited-channel device. Whether Comcast actually misled and harmed its subscribers cannot be determined on a class-wide basis because of the variety of possible reasons that a subscriber rented the equipment at issue. Plaintiff alleges that the converter box was unnecessary for all basic cable subscribers. This is not true. The undisputed record here demonstrates that the cable boxes may have been necessary for some basic cable subscribers to enjoy the full programming available at the best quality possible. Those viewers could not have been harmed by any alleged misrepresentation. They would have rented the equipment whether or not Comcast had obtained their affirmative consent. It would be impossible to determine, on class-wide proof, whether all subscribers were harmed by Com-cast’s conduct” (2007 WL 2015440, *6, 2007 US Dist LEXIS 53188, *20-21 [emphasis added]).
So too, in this case, in order to establish that each member of *1091 the putative class was injured by the delivery of the notice after installation of basic cable service, it would be necessary to establish whether they valued the converter box or remote control they rented from Time Warner. For those who did not want or value the converter box or remote controls they rented, they could not be considered injured if they had knowledge at the inception of service, from any source, that converter box and remote control rentals were, in fact, superfluous in their circumstances.
Plaintiff argues that Deitz v Comcast Corp. (supra) is distinguishable, and thus not persuasive, because it did not involve an installation practices claim for optional unordered services or equipment under 47 USC § 543 (f), and suggests that the plaintiffs complaint was limited to being charged for unnecessary equipment after he downgraded from premium to basic cable. Quite to the contrary, the complaint in Deitz sought to “recover on behalf of customers who subscribed to basic programming and who were provided, but did not affirmatively request, a converter box and remote control” (2007 WL 2015440, *4, 2007 US Dist LEXIS 53188, *10-11), and, as the court noted in ruling that the plaintiff was not typical of the class he sought to represent, this included new subscribers to basic programming.
Plaintiff argues that Time Warner has violated the Cable Television Consumer Protection and Competition Act of 1992 (47 USC §§ 521-559), which prohibits a cable company from engaging in negative option billing, defined therein as charging a subscriber for any service or equipment that the subscriber has not affirmatively requested by name (47 USC § 543 [f]). By installing and billing for optional converter boxes and remotes without the subscriber’s affirmative consent, plaintiff alleges that Time Warner has committed a per se violation of General Business Law § 349. However, there is no private right of action for a violation of 47 USC § 543 (f), and plaintiff cannot use General Business Law § 349 to circumvent the lack of private right of action under this federal statute. (Cf. Broder v Cablevision Sys. Corp., 418 F3d 187, 199 [2d Cir 2005] [no private right of action for violation of the uniform rate requirement of 47 USC § 543 (d)].) Plaintiff must still prove each of the elements of an unfair trade practice, including actual injury. In each of the four cases cited at page 29 of plaintiff’s moving memorandum of *1092 law,[3] there was no question that the plaintiff had been injured by the defendant’s alleged violation of the statutes at issue in those cases. For example, plaintiff cites MacDonell v PHH Mtge. Corp. (45 AD3d 537 [2d Dept 2007]) for the proposition that a mortgage company’s violation of Real Property Law § 274-a (2), which prohibits a mortgagor from charging fees for providing mortgage-related documents, was a per se violation of General Business Law § 349. However, the plaintiffs in that case were clearly injured by having to pay a $40 facsimile charge to obtain their mortgage payoff statement. As the court in Deitz ruled, merely alleging a violation of 47 USC § 543 (f) does not establish all of the elements of an unfair trade practices claim. (Deitz, 2007 WL 2015440, *6 n 5, 2007 US Dist LEXIS 53188, *19 n 5.)
Plaintiff argues that similar claims against cable companies Charter Communications and Adelphia Communications have been certified as class actions in South Carolina and the Bankruptcy Court in New York, and should be considered persuasive authority for certification of this action. I do not find either of these cases persuasive.
In Nicholls v Charter Communications Holding Co. (SC Ct Com Pl, 7th Jud Cir, No. 01-CP-42-3246; see Saia affirmation, exhibit 7), class action certification was granted on a claim that Charter Communications “illegally” required basic cable customers to rent cable converter boxes that had no value and served no purpose. Nowhere does the South Carolina court mention on what legal basis the plaintiffs were seeking damages in Nicholls. To the extent that their claim for damages is based on a violation of 47 USC § 543 (f), as stated above, there is no such private right of action. In In re Adelphia Communications Corp. (325 BR 89 [SD NY 2005]; see Saia affirmation, exhibit 8), the classes were certified as part of a voluntary settlement between the parties.
As the First Department recently held, “ ‘[t]hat wrongs were committed pursuant to a common plan or pattern does not permit invocation of the class action mechanism where the wrongs done were individual in nature or subject to individual defenses.’ ” (Yeger v E*Trade Sec. LLC, 65 AD3d at 413, quoting Mitchell v Barrios-Paoli, 253 AD2d 281, 291 [1st Dept *1093 1999].) Plaintiff fails to satisfy the commonality criteria of CPLR 901 (a) (2); individual questions as to whether the basic cable subscribers were injured overwhelm any common issues.
Subdivision (a) (4) of CPLR 901 requires that the representative party must fairly and adequately protect the interest of the class. “It has been recognized that legal fees have been a prime motivation for the filing of class actions. In most cases, the financial benefit to counsel far exceeds the individual benefit to class members.” (Meachum v Outdoor World Corp., 171 Misc 2d 354, 370 [Sup Ct, Queens County 1996] [citations omitted].)
“An obvious function of the class action representative is to act as a check on the attorneys, as an additional assurance that in any settlement or other disposition the interests of the members of the class will take precedence over those of the attorneys. This would seem to require that the class representative shall have some measure of independence from the attorneys” (Tanzer v Turbodyne Corp., 68 AD2d 614, 620 [1st Dept 1979]; see also Pruitt v Rockefeller Ctr. Props., 167 AD2d at 24 [the class representative must be able to be a check on the attorneys]).
Time Warner argues that Kimberly Brissenden is not an adequate class representative, because she is the sister-in-law of lead counsel, Stephen V Saia, Esq. Plaintiff counters that this relationship is not so close so as to render her an inadequate class representative.
The potential conflict of interest which arises out of class representatives, who have employment or familial relationships with class counsel, has been the subject of several reported decisions. Some courts have permitted relatives of plaintiffs’ counsel to serve as class representatives. (See e.g. Hazelhurst v Brita Prods. Co., July 12, 2001, Cahn, J., No. 603367/98, revd on other grounds 295 AD2d 240 [1st Dept 2002] [two of three named plaintiffs were aunt and first cousin to one of plaintiffs’ attorneys]; see also Lewis v Goldsmith, 95 FRD 15, 20 [D NJ 1982] [plaintiff represented by his uncle and had worked during past summers for his uncle’s law firm]; Fischer v International Tel. & Tel. Corp., 72 FRD 170, 173 [ED NY 1976] [plaintiff represented by his son].) The majority of courts, however, have refused to do so on the ground that the relative cannot fairly and adequately represent the class under circumstances giving rise to an apparent conflict of interest. (See e.g. Tanzer v Turbodyne Corp., 68 *1094 AD2d at 618-621 [class certification denied where a lawyer with the firm who was handling the class action was the father of one of the plaintiffs, and the latter routinely made small investments solely to enable the related law firm to bring class actions]; Viders v Pennsylvania Handicapped Workers, 90 Misc 2d 579, 579-580 [Sup Ct, Nassau County 1977] [wife of law partner in firm which sought to represent class was not an appropriate representative of class]; Susman v Lincoln Am. Corp., 561 F2d 86 [7th Cir 1977] [class could not be adequately represented by the attorney’s brother]; In re Microsoft Corp. Antitrust Litigation, 214 FRD 371, 374-375 [D Md 2003] [sister-in-law of class counsel was merely a “pawn” of class counsel]; Zlotnick v TIE Communications, Inc., 123 FED 189, 193-194 [ED Pa 1988] [father of class counsel not adequate class representative]; Kirby v Cullinet Software, Inc., 116 FRD 303, 308-310 [D Mass 1987] [same].)
In Hazelhurst v Brita Prods. Co. (supra), my former colleague, Justice Herman Cahn, believed that an aunt and cousin could serve as sufficient independent checks on class counsel, in part, because counsel are supervised by the court, to the extent that settlement, counsel fees and other matters require court approval. However, other courts have
“noted that such judicial oversight is not a realistic substitute for enforcement of the fair and adequate representation requirement. Eather, the court’s task of overseeing the substantive merits of a settlement or compromise of a suit is greatly facilitated by knowing that the procedures designed to assure adequate representation are carefully followed.” (Kirby v Cullinet Software, Inc., 116 FRD at 310 [citations omitted].)
I agree with this latter point of view.
The ability of plaintiff to act as a check on her brother-in-law is also called into question, because the circumstances suggest that Mr. Saia is the real motivating force behind this litigation. First, plaintiff testified at her deposition that the reason she unplugged the cable from her converter box in May 2002, and learned that she did not need the converter in order to receive basic cable, was due to a telephone conversation with Mr. Saia, in which he was telling her about a litigation against another cable company he was prosecuting in Massachusetts. Second, according to the engagement letter that Ms. Brissenden signed, she will have no financial obligations to Mr. Saia no matter *1095 what happens in the case. (Saia affirmation, exhibit 24.) Third, this is not the first time Mr. Saia has commenced a putative class action lawsuit naming as class representatives various members of his wife’s family.[4] (See e.g. Saunders v Putnam Am. Govt. Income Fund, D Mass, No. 03-12086-NG [Mr. Saia’s wife, Diane Saunders, is named as a plaintiff]; Saunders v Port Auth. of NY, SD NY, No. 02-9768RLC [the plaintiff, Jennifer Saunders, is a sister-in-law]; Doran v Massachusetts Turnpike Auth., D Mass, No. 02-11361-NG [Wendy Saunders, another sister-in-law, is named as a plaintiff]; Saunders v AOL Time Warner, Sup Ct, NY County, No. 601544/03 [in the predecessor to this action, Linda Saunders, yet another of Mr. Saia’s sisters-in-law, was named a plaintiff together with Kimberly (nee Saunders) Brissenden].)
The notion that Mr. Saia is not the motivating force behind all of these class action lawsuits strains credulity, and an inference can be drawn that there is a lack of independence on the part of Kimberly Brissenden. Since the certification of this case as a class action may result in a judgment binding on thousands of cable subscribers who have not expressly authorized suit against Time Warner on their behalf, I must be satisfied that the interests of the members of the class will take precedence over those of the attorneys in any settlement or other disposition. This is not possible where lead counsel is so closely related to the class plaintiff and has a history of bringing class actions on behalf of immediate members of his family.
Accordingly, I find that Kimberly Brissenden is not a proper class representative, because of her close familial relationship with lead counsel Stephen V Saia, Esq. At oral argument of this motion, Mr. Saia represented that he has been assisted in this matter by cocounsel, Jacob Perkinson, Esq. and Dennis Johnson, Esq., partners in the Vermont law firm of Johnson & Perkinson (Feb. 24, 2009 tr at 3), and the plaintiff’s amended notice of motion seeks to have Mr. Saia and Mr. Perkinson be appointed as co-lead counsel. However, according to the firm resume offered for Johnson & Perkinson (Saia affirmation, exhibit 26), neither of these two Vermont lawyers are admitted to practice in this court and neither have sought pro hac vice admission.
Plaintiff also cannot satisfy CPLR 901 (a) (3), which requires that the claims of the class representative are typical of the *1096 class. After Mr. Saia informed her, in May 2002, that the converter box was an unnecessary piece of equipment that she was renting from Time Warner, Ms. Brissenden continued to rent the converter box for purposes of this litigation. (Brissenden deposition at 15-17.) A portion of Kimberly Brissenden’s claim may be subject to a defense based on the “voluntary pajrment doctrine.” This defense “bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law.” (Dillon v U-A Columbia Cablevision of Westchester, 100 NY2d 525, 526 [2003]; Solomon v Bell Atl. Corp., 9 AD3d 49, 55 [1st Dept 2004].) As the Second Department noted in the Dillon case, “ £[w]hen a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made.’ ” (Dillon v U-A Columbia Cablevision of Westchester, 292 AD2d 25, 28 [2d Dept 2002], affd 100 NY2d 525 [2003].)
A class action must be superior to other available methods for the fair and efficient adjudication of this controversy. (CPLR 901 [a] [5].) The complaint alleges that the financial harm to proposed members of the class is relatively small— between $3.25 and $4.50 per month for each converter box rented from Time Warner and approximately $.20 per month for each rented remote. (Amended complaint 1ÍH 19, 64 [e].) Clearly, the expense and burden of individual civil litigation would make it impossible for most basic cable subscribers to seek legal redress in the courts for the alleged wrongs. In view of the fact that the amount of damages sustained by each member of the proposed class is very small, and the number of potential class members is so large, a class action would be superior to individual civil litigation. Nevertheless, there is another forum for the fair and efficient adjudication of this controversy over Time Warner’s alleged violation of federal law — a complaint to the Federal Communications Commission, which has the power to impose “a monetary forfeiture or . . . other remedial relief’ (see Matter of Monmouth Cablevision, Monmouth County, N.J., 10 FCCR 9438, 9441 [LOI-94-I, 1995]; see Saia affirmation, exhibit 5).
Accordingly, because I find that the claims in this action fail to meet most of the statutory criteria for class action certification, the plaintiffs motion is denied.
*1097 For the foregoing reasons, it is hereby ordered that plaintiffs motion for class action certification is denied.

. This order also addresses a similar complaint filed by John Samuel in Queens County and transferred to this court by order of the Litigation Coordinating Panel.

. If a plaintiff has not satisfied the criteria under CPLR 901, the court need not consider the factors listed in CPLR 902 that concern the relative *1089 propriety of maintaining the action as a class action. (Yeger v E*Trade Sec. LLC, 65 AD3d at 413 n.)

. Although plaintiff actually cites five cases for the proposition that Time Warner’s alleged negative option billing practice is a per se violation of General Business Law § 349, the first case cited, State of New York v Princess Prestige Co. (42 NY2d 104 [1977]), did not involve General Business Law §349.

. Saunders is the maiden name of Mr. Saia’s wife, Diane.